## UNITED STATES v. ADIELIZZIO et al.
### No. 415.

Circuit Court of Appeals, Second Circuit.
June 3, 1935.

~ Harold L. Turk, of Brooklyn, N. Y., for appellant Adielizzio.

Jacob Teck, of New York City, for appellant Sperling.

Martin Conboy, U. S. Atty., of New York City (Joseph W. Burns and Francis A. Mahony, Asst. U. S. Attys., both of New York City, of counsel), for appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The appellants were indicted with two other defendants, who pleaded guilty, on a charge of conspiring to aid certain persons to obtain seaman's certificates by means of fraud and false statements. After trial the jury returned a sealed verdict which found the appellants guilty and recommended "extreme mercy and leniency." Shortly before this verdict was returned, the jury had notified the judge in writing that "it will be impossible to come to an unanimous agreement." To this an oral reply was transmitted through the bailiff that the jury would be taken to a hotel for the night if they did not agree. Adielizzio was sentenced to imprisonment for 30 days, and Sperling to imprisonment for 90 days, at Detention Headquarters, New York City. They have appealed. Each appeal presents the same questions: (1) The sufficiency of the indictment, and (2) the effect of the message sent by the judge to the jury during its deliberations in the jury room.

The indictment charges a conspiracy to violate sections of the United States Code (Cr. Code, §§ 77, 332, 18 USCA §§ 139, 550), and particularly to aid certain named persons to obtain from the collector of customs at Philadelphia, by means of fraud and false statements, "certificates of citizenship, to wit, Seaman's Certificates of Service and Protection and Seamen's Protection Certificates" issued under 8 USCA § 376 and 46 USCA § 687 and the rules and regulations promulgated thereunder. Fourteen overt acts are alleged to have been committed within the Southern District of New York.

To the appellants' objection to the indictment because it fails to specify the particular fraudulent means or false statements used, and fails to allege that the persons who were to obtain the certificates had knowledge that they were to be procured by fraud, it would seem a sufficient answer to refer to Wong Tai v. United States, 273 U. S. 77, 82, 47 S. Ct. 300, 71 L. Ed. 545; Burroughs et al. v. United States, 290 U. S. 534, 54 S. Ct. 287, 78 L. Ed. 484. But it is unnecessary to decide as to this objection because of the conclusion we have reached as to the more serious attack upon the indictment, namely, that it charges no criminal conspiracy. This contention is based on the premise that section 139 of title 18 USCA does not forbid the fraudulent obtaining of the seaman's certificates mentioned in the indictment, but refers only to "certificates of citizenship" relating to the naturalization of aliens. In our opinion this contention must prevail in view of the history of the legislation now embodied in the statutes in question.

Seaman's Protection Certificates are issued pursuant to section 686 of title 46 USCA by the collector of customs in any district at the request of a seaman who is a citizen of the United States and produces proof of his citizenship. Section 686 is taken verbatim from section 4 of the Act of May 28, 1796 (1 Stat. 477). It appeared as section 4588 in the Revised Statutes of 1878.

As indicated in its title and the discussion in Congress prior to its enactment, the Act of 1796 was designed for the protection of American seamen against impressment into service on British ships. See Annals of Congress, 4th Cong., 1st Sess. (1795–1796) pp. 802–820. It contained no prohibition against forging, counterfeiting, or fraudulently obtaining certificates authorized to be issued under section 4, nor did it designate such certificates as "certificates of citizenship," though the editor of the official volume in which the act is printed so termed them in the margin. In 1878 in the Revised Statutes, section 4591 (46 USCA § 687) the term "certificates of citizenship" was employed by Congress to describe seaman's certificates issued under R. S. § 4588 (46 USCA § 686). The language of R. S. § 4591, reproduced in 46 USCA § 687, was "a list of the seamen to whom certificates of citizenship have been granted"; this carried forward section 7 of the Act of 1796, 1 Stat. 478, providing for "a list of the seamen registered under this act." Section 686 of title 46 has added to the language of section 4 of the Act of 1796, p. 477, the caption "Certificates of citizenship." Rev. St. § 4588 and 46 USCA § 686 appear under the general caption "Protection and Relief" under titles relating to "Merchant Seamen," in the Revised Statutes, and "Shipping," in the United States Code. The foregoing indicates that seaman's certificates issued under section 686, 46 USCA, and its predecessors have always been deemed a protective measure for sailors and have never had any relation to naturalization proceedings.

Seaman's Certificates of Service and Protection are issued under 8 USCA § 376 and regulations promulgated by the Treasury. Section 376 provides that every alien seaman shall, after his declaration of intention to become a citizen of the United States and after three years of service upon a merchant or fishing vessel of the United States, be deemed a citizen for the purpose of serving on board any such merchant or fishing vessel. This statute is derived from Rev. St. § 2174, which in turn came from section 29 of the Act of June 7, 1872 (17 Stat. 268), for the further protection of seamen. Section 376, 8 USCA does not itself provide for the issuance of any certificate, but by Treasury Decision No. 43,456 promulgated on June 25, 1929, collectors of customs were authorized to issue certificates to show compliance by alien seamen with the terms of the section. Customs Reg. of 1931, Arts. 97–99. Such certificates, though based on the alien seaman's declaration of intention to become a citizen, are not certificates of any step in a naturalization proceeding.

We turn now to section 139 of title 18, USCA, to determine whether seaman's certificates of the sorts above described are within the scope of its prohibitions. The section contains five clauses separated by semicolons. The first refers to the use of any "certificate of citizenship" knowing the same to be forged or unlawfully obtained; the second to possession of any false "certificate of citizenship purporting to have been issued under any law of the United States relating to naturalization"; the third to obtaining, accepting, or receiving "any certificate of citizenship" known to have been procured by fraud or false statement; the fourth to possession of "any blank certificate of citizenship provided by the Bureau of Naturalization"; and the fifth to conduct by one "after having been admitted to be a citizen." It is clear that the second and fourth clauses relate to certificates having to do with naturalization, while the first and third clauses speak of "any certificate of citizenship" without qualification; hence in those clauses, the United States argues, the words should be interpreted broadly and should be not confined to certificates relating to naturalization proceedings. But the history of the legislation precludes that view. Section 139 is derived from section 77 of the Act of March 4, 1909 (35 Stat. 1102), and section 19 of the Act of June 29, 1906 (34 Stat. 602). Section 77 of the Act of 1909 was drawn from R. S. § 5425, which in turn goes back to section 2 of the Act of July 14, 1870 (16 Stat. 254). The latter is entitled "An Act to amend the Naturalization Laws and to punish Crimes against the same, and for other Purposes." Section 4 makes the provisions of the act applicable to proceedings before courts of naturalization, and has been carried over into section 143 of title 18, USCA. Section 2 is very close in phraseology to the present section 139 of title 18, USCA. Some of its clauses could not possibly refer to seaman's certificates issued under section 4 of the Act of 1796 since they expressly refer to naturalization of aliens. Two clauses speak of "any certificate of citizenship" without qualification, but in our opinion these words must be limited to the purpose of the statute, namely, the punishment of crimes against the naturalization laws. See United States v. Melfi, 118 F. 899, 902 (D. C. Del.). The

844

appellee's contention that the phrase in the title, "and for other Purposes," indicates an intent to include certificates having no relation to naturalization, has no merit. The quoted phrase has reference to sections 5 and 6 of the act providing for the appointment of citizens to perform certain duties relating to registering and voting, and the appointment of special deputy marshals to preserve order at elections. Any doubt as to whether the Act of 1870 purported to punish the procurement by fraud of certificates which did not relate to naturalization must, under well-recognized principles, be construed against broadening the scope of a criminal statute. Prussian v. United States, 282 U. S. 675, 677, 51 S. Ct. 223, 75 L. Ed. 610; United States v. Fruit Growers Exp. Co., 279 U. S. 363, 369, 49 S. Ct. 374, 73 L. Ed. 739. Since Congress adopted the clause of 18 USCA § 139 relied upon by appellee from the Act of 1870 practically without change of language, there is no reason to suppose an intention to accord it a broader scope than the act from which it was derived. See Davis v. Pringle, 1 F.(2d) 860, 863 (C. C. A. 4), affirmed 268 U. S. 315, 45 S. Ct. 549, 69 L. Ed. 974. So far as reported cases indicate, every indictment brought under section 139 of title 18, USCA, or its antecedent statutes, has involved forgery or fraud in respect to naturalization proceedings, and not in respect to seaman's certificates. Dolan v. United States, 133 F. 440 (C. C. A. 8); United States v. Melfi, supra; United States v. Lehman, 39 F. 768 (D. C. Mo.); Green v. United States, 150 F. 560 (C. C. A. 9). Accordingly, it must be concluded that 18 USCA § 139 does not provide a penalty for obtaining seaman's certificates known to have been procured by fraud. No other statute making such conduct criminal has come to our attention. The indictment should have been dismissed for failure to charge an offense against the United States.

There is nothing contrary to this conclusion in the case of United States v. Tynen, 11 Wall. 88, 20 L. Ed. 153, relied upon by appellee. That case held that the Act of 1870, to which we have heretofore made reference, effected a repeal by implication of the provisions of section 13 of the Act of March 3, 1813 (2 Stat. 811). This section made it a felony to forge or counterfeit any "certificate or evidence of citizenship referred to in this act," and to "pass, utter, or use as true, any false, forged or counterfeited certificate of citizenship." The appellee argues that the Supreme Court has

thus recognized that the Act of 1870, although referring in its title to crimes against the naturalization laws, included offenses set forth in the Act of 1813, and that the latter made it a crime to forge or counterfeit seaman's certificates. This position is untenable. Section 13 of the Act of 1813 is limited to certificates "referred to in this act." The only certificates mentioned in the Act of 1813 are certificates of naturalization.

The conclusion which we have felt constrained to reach with respect to the insufficiency of the indictment makes unnecessary a decision of the question relating to the effect of the message to the jury. Whether this incident would fall within the condemnation of Shields v. United States, 273 U. S. 583, 47 S. Ct. 478, 71 L. Ed. 787, we need not say.

Judgment reversed.