**UNITED STATES of America, Appellee,**

v.

**Milan Confesor RODRIGUEZ SERRATE, Defendant-Appellant.**

No. 75–1292.

United States Court of Appeals, First Circuit.

Argued Feb. 2, 1976.

Decided April 23, 1976.

8

Marvin Diaz Ferrer, San Juan, P. R., by appointment of the Court, on brief for defendant-appellant.

Julio Morales Sanchez, U. S. Atty., and Jose A. Anglada, Asst. U. S. Atty., San Juan, P. R., on brief for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

Appellant after trial to a jury was convicted on each of four counts of an indictment charging him with falsely representing himself to be a United States citizen, making false statements in applications for an immigrant visa and a passport, and using false documents. 18 U.S.C. §§ 911, 1015(c), 1542 and 1546 (1970). The court sentenced him to a one year prison term on each count to be served concurrently. In all these transactions[1] appellant represented himself to be a citizen of the United States by reason of his birth in Puerto Rico whereas the government contended that he

---

1. The evidence showed that on October 1, 1969, appellant applied for and obtained a United States passport, stating that he was born in Rio Piedras, Puerto Rico on October 12, 1936, whereas documents from the Dominican Republic show him to have been born on November 12, 1935, in that country. (Count I).

With this passport he sought in 1972 to apply for an immigrant visa for his wife and children. (Count II). When an investigation revealed he was not a United States citizen, his passport was taken and he was barred from returning to the United States. Appellant nevertheless returned to Puerto Rico and in 1973 procured a delayed birth certificate from the Commonwealth based on false evidence purporting to show he was born in Puerto Rico. He then travelled to the Dominican Republic. When he returned to Puerto Rico on January 15, 1975, he represented himself to be a United States citizen by birth (Count III), and proferred to Immigration and Naturalization Service officers the false birth certificate he had previously procured. (Count IV).

was born in the Dominican Republic. We affirm.

Appellant's primary objection on this appeal is that the trial court erred in permitting the government to introduce into evidence over his objection various documents purporting to establish that he was a citizen of the Dominican Republic. All of the items in contention except one[2] are official documents from the Dominican Republic upon which the government relied to estab-

lish the falsity of appellant's claims to United States citizenship. Appellant contends that since the documents are official in nature it was improper for the court to admit them in reliance on 18 U.S.C. § 3491[3] which he asserts applies only to unofficial foreign documents. He points to 28 U.S.C. § 1741 (1970) and Fed.R.Civ.P. 44(a)(2)[4] as providing the proper avenues for putting into evidence foreign official documents.[5] While we agree that Rule 44(a)(2) is the

2. The documents in question were government exhibits 1–3, 5–7, 9 and 10 at trial. Exhibit 5, the only nonofficial document, is a church baptismal certificate from appellant's home parish in the Dominican Republic. The other exhibits are as follows:

1. This exhibit, described in the trial transcript as information from appellant's application for a Dominican passport, was not available in the record before us. Consequently we do not consider the issue of its admissibility, except to note that its absence is in no way prejudicial since the alleged contents are paralleled by information in other exhibits considered below.

2. A copy of appellant's Dominican Republic Identification Card (Cedula) No. 72810.

3. A transcribed copy of appellant's birth certificate from the town of San Francisco de Macoris, Dominican Republic.

6. An official summary of military records concerning the service of appellant's father in the Dominican army.

7. A transcribed copy of a death certificate kept by the Civil State Office of the Dominican Republic recording the death of appellant's father.

9. An attested statement by the Sub-secretary of State of the Dominican Office of Foreign Affairs concerning the passport status of appellant's parents.

10. A copy of a statement reporting appellant's birth as contained in an official Dominican demographic registry.

3. Section 3491 in pertinent part provides:

". . . *Foreign documents*

"Any book, paper, statement, record, account, writing, or other document, . . . of whatever character and in whatever form, as well as any copy thereof . . . which is not in the United States shall, when duly certified as provided in section 3494 of this title, be admissible in evidence in any criminal action or proceeding in any court of the United States if the court shall find, from all the testimony taken with respect to such foreign document pursuant to a commission executed under section 3492 of this title, that such document . . . satisfies the requirements of section 1732 of title 28, unless

in the event that the genuineness of such document is denied, any party to such criminal action or proceeding making such denial shall establish to the satisfaction of the court that such document is not genuine. . . ."

4. Section 1741 provides:

". . . *Foreign official documents*

"An official record or document of a foreign country may be evidenced by a copy, summary, or excerpt authenticated as provided in the Federal Rules of Civil Procedure."

The relevant portion of Rule 44 provides:

". . . *Proof of Official Record*

(a) *Authentication*

". . .

(2) *Foreign.* A foreign official record, or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof; or a copy thereof, attested by a person authorized to make the attestation, and accompanied by a final certification as to the genuineness of the signature and official position (i) of the attesting person, or (ii) of any foreign official whose certificate of genuineness of signature and official position relates to the attestation or is in a chain of certificates of genuineness of signature and official position relating to the attestation. A final certification may be made by a secretary of embassy or legation, consul general, consul, vice consul, or consul or agent of the United States, or a diplomatic or consular official of the foreign country assigned or accredited to the United States. If reasonable opportunity has been given to all parties to investigate the authenticity and accuracy of the documents, the court may, for good cause shown, (i) admit an attested copy without final certification or (ii) permit the foreign official record to be evidenced by an attested summary with or without a final certification.

5. Appellant alternatively contends that the requirement set forth in *Duncan v. United States,* 68 F.2d 136, 141–42 (9th Cir. 1933) should have been applied here, viz. in order for a foreign record to be "admitted in evidence it should be

appropriate vehicle for admitting such documents, we hold that its requirements were complied with here.

■ There can be little dispute that Rule 44(a)(2) is the applicable and appropriate rule in these circumstances. At trial the government introduced copies of the official documents. Although the rule permits the use of copies it requires that they be attested to by a person authorized to do so and "accompanied by a final certification as to the genuineness of the signature and official position of the attesting person." *United States v. Leal,* 509 F.2d 122, 126 (9th Cir. 1975). The final certification must be made by "a diplomatic official of the United States or [a] diplomatic or consular official of the foreign country assigned or accredited to the United States." *Id.* As to the disputed documents here the government presented a copy of each accompanied by an attestation of its authenticity by the Dominican official in charge of the records from which it was obtained. In the case of four documents (Exhibits 2, 3, 6 and 7, *see* n.2 *supra*) the government also provided final official certification from Mr. H. H. Buzbee, the United States Consul in the Dominican Republic. Thus, with regard to these documents the precise terms of Rule 44(a)(2) were complied with and there can be no dispute as to their admissibility despite the fact that the trial court did not explicitly admit them in reliance on the rule. In the case of the remaining documents, however, the last step of final certification was not complied with. The government contends it was able to bridge this gap by proffering extrinsic evidence in support of particular documents. For example, with regard to exhibit 10, *see* n.2 *supra,* the government presented testimony from Mr. Andres Linares, a Dominican official in charge of the demographic records for the area in which appellant was born. Linares, who had authorized the photocopy of the portion of the birth registry presented in evidence, testified as to the official procedure by which the records were kept. The government contends that in this fashion it followed what was "in essence Rule 44(a)(2) procedure," *see United States v. Leal, supra* at 127. However, we do not uphold the evidentiary validity of the documents in question on this ground.

■ We note that the final sentence of Rule 44(a)(2) permits a court "for good cause shown" to admit attested copies without final certification, *see* n.4 *supra,* in recognition of the fact that "in some situations it may be difficult . . . to satisfy the basic requirements of the rule. . . ." Advisory Committee's Note to Rule 44, 39 F.R.D. 69, 116 (1966). *See United States v. Leal, supra* at 126. In the present case appellant was shown all the documents and furnished copies of them. In addition, the trial court wisely adjourned the trial for an extra day in order to permit appellant's counsel to examine all the documents in detail. Since these documents dealt only with the date and location of appellant's birth and his family origins, facts within his intimate personal knowledge, it would appear he had more than ample opportunity to ascertain their accuracy. Furthermore, although he objected to the admissibility of the documents on the ground of improper certification, appellant "raised no objection directed to the absence of good cause . . . ." as set forth in Rule 44(a)(2). *United States v. Pacheco-Lovio,* 463 F.2d 232, 234 (9th Cir. 1972). Under these circumstances we cannot say that the decision of the trial court to admit the challenged documents was improper.[6]

---

proved that the record was kept in compliance with the local [i. e. foreign] law." We do not, however find merit in this claim. As the district court correctly noted at trial, *Duncan* was decided prior to the enactment of relevant statutory provisions regarding the admissibility of foreign documents. *See* 28 U.S.C. § 1741; Fed. R.Civ.P. 44 and Advisory Committee Notes thereto. Moreover, recent decisions of the

Ninth Circuit which decided *Duncan* make no reference to that case but rely instead on the provisions of Rule 44. *See United States v. Leal,* 509 F.2d 122 (9th Cir. 1975).

**6.** Since Exhibit 5, a baptismal certificate, is apparently not an official document, we do not pass upon its admissibility here except to note that it was attested to, and was officially certified by the United States Consul. Whether or

Appellant also contends that the court erred in not dismissing Counts III and IV of the indictment which charged violations of 18 U.S.C. §§ 911 and 1015(c) respectively. Both counts concern appellant's attempt to enter the United States as a citizen in January, 1975. On that occasion he presented a false Puerto Rican birth certificate as evidence of his asserted citizenship status. Appellant claims that this act does not amount to a false representation of citizenship within the meaning of the statute.[7] However, this claim cannot prevail. He presented the birth certificate at the International Airport, Isla Verde, Puerto Rico at a checkpoint where an immigration official was seeking to determine the nationality of arriving passengers.[8] Given this context appellant's act was sufficient to constitute a violation of § 911. *Ackerschott v. United States,* 139 F.2d 114 (9th Cir. 1943); *see Chow Bing Kew v. United States,* 248 F.2d 466, 469 (9th Cir.), *cert. denied,* 355 U.S. 889, 78 S.Ct. 259, 2 L.Ed.2d 188 (1957); *United States v. Franklin,* 188 F.2d 182 (7th Cir. 1951).

Also, we are not persuaded by appellant's claim that the false birth certificate he presented to the immigration official is not the type of documentary evidence of citizenship covered by § 1015(c).[9] There is ample evidence to indicate that birth certificates are routinely relied on by Puerto Rican officials to determine alien or citizen status. Consequently, appellant's presentment of the certificate in support of a claim of citizenship when he knew it to be based on false information clearly places it among those documents whose use Congress meant to bar through enactment of this statute. *See Dolan v. United States,* 133 F. 440 (8th Cir. 1904). *Cf. United States v. Bithony,* 472 F.2d 16, 22 (2d Cir.), *cert. denied,* 412 U.S. 938, 93 S.Ct. 2771, 37 L.Ed.2d 397 (1973); *United States v. Adielizzio,* 77 F.2d 841, 843 (2d Cir. 1935).

We have examined appellant's other assignments of error and find them to be insubstantial.

*Affirmed.*

---

not its admission into evidence was erroneous—a point we do not decide—error, if any, was harmless since the facts in the certificate were merely corroborative of those amply substantiated by other documents.

7. Section 911 provides:

"Whoever falsely and willfully represents himself to be a citizen of the United States shall be fined not more than $1,000 or imprisoned not more than three years, or both."

8. After appellant proferred the false birth certificate to the immigration official in support of his claim to be a United States citizen the official asked him if the certificate was his and he responded affirmatively.

9. The pertinent portion of § 1015 provides:

"(c) Whoever uses or attempts to use any certificate of arrival, declaration of intention, certificate of naturalization, certificate of citizenship or other documentary evidence of naturalization or of citizenship, or any duplicate or copy thereof, knowing the same to have been procured by fraud or false evidence or without required appearance or hearing of the applicant in court or otherwise unlawfully obtained . . .

". . .

"Shall be fined not more than $5,000 or imprisoned not more than five years, or both."