**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Emma F. LOPEZ, Defendant-Appellant.**

**No. 82–2245.**

United States Court of Appeals, Fifth Circuit.

May 19, 1983.

---

Before POLITZ and JOLLY, Circuit Judges, and HUNTER *, District Judge.

E. GRADY JOLLY, Circuit Judge:

Appellant, Emma F. Lopez, pleaded guilty in February 1980 to a one-count violation of 18 U.S.C. § 1425 which proscribes the knowing procurement of any certificate or other evidence of citizenship for any person not entitled thereto. She was given a suspended sentence and five years' supervised probation. After her probation was revoked in February 1982, she filed a petition for habeas corpus under 28 U.S.C. § 2255 which the district court denied. Lopez has filed a timely appeal. We affirm.

I.

Emma Lopez was a midwife in Laredo, Texas, for thirty-four years. As part of this occupation, she registered births with the city and state officials. In March 1979, Leonarda Vigil, for whom Lopez had previously delivered two other babies, approached Lopez and told her that although she had anticipated that her son, Francisco, would be born in the United States, he had, in fact, been born in Mexico. Vigil sought Lopez's help in obtaining a delayed Texas birth certificate for her child which Lopez agreed to provide in return for $200.

The $200 was paid over a five-month period, and when the final payment was made, Lopez executed certain documents with the city secretary's office, with copies to the Texas Bureau of Vital Statistics, stating that she had been in attendance as midwife at the birth of the infant in Laredo, Texas. Based on this information, the Texas Bureau of Vital Statistics issued a delayed birth certificate which Vigil used when entering the United States from Mexico with her infant child. The child looked older than the date on the delayed birth certificate and thus aroused the suspicion of the immigration officer. Upon questioning, Vigil told the officer the whole story, and subsequently called Lopez and asked her what she should do. Lopez told Vigil to

J.G. Hornberger, Jr., Laredo, Tex., for defendant-appellant.

John M. Potter, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

* District Judge of the Western District of Louisi- ana, sitting by designation.

stick to her original story that the child had, in fact, been born in Laredo. This call was recorded.[1]

On January 18, 1980, Lopez was indicted on two counts, both a conspiracy and an attempt to procure evidence of citizenship in violation of 18 U.S.C. § 1425. On February 11, 1980, Lopez filed a Motion to Dismiss the indictment in which she alleged that the main purpose of a Texas birth certificate did not relate to naturalization or citizenship proceedings, and therefore 18 U.S.C. § 1425 could not support a conviction for procuring a falsified Texas birth certificate. She thus claimed that the indictment failed to charge a criminal offense. This motion was denied, and on February 20, 1980, Lopez pleaded guilty to the second count of the indictment in return for the government's withdrawal of the first count and its recommendation to the trial judge that she not be incarcerated.

On February 25, 1980, the trial judge held a sentencing hearing at which time he reviewed the report of the probation officers. He noted that Lopez had been under investigation for at least ten years for manipulating birth certificates and that she had previously received a misdemeanor conviction for a similar offense. The judge noted her age, sixty years old, and stated that he did not wish to deprive her of her livelihood, but that also he did not want any more illegal birth certificates. He asked the defendant to work with her attorneys and the probation officers to find a method to serve both ends. Noting that he would later review any proposed plan for modification of the probation, he sentenced Lopez to four years in prison, suspended that sentence, and placed her on five years probation. Two special conditions were attached to her probation: one was that she not practice midwifery in any form, subject to any reasonable plan that she might later submit which would allow her to deliver babies in

Laredo but would preclude any further illegal activities, and the second was that the fine be paid as specified.

On May 5, 1980, Lopez filed a Notice of Appeal with this court which she later dismissed after the trial judge granted her motion to modify the probation conditions. This modification allowed her to continue her midwife practice on the condition that each birth be accompanied by affidavits by Lopez, the mother of the baby, and by a specified disinterested third party, and that these affidavits be delivered to the probation office within forty-eight hours of the birth.

On January 20, 1982, the judge revoked her probation after finding that she had signed five delayed birth certificates, verifying the earlier birth of a child without meeting the conditions specified in her modified probation. She was sentenced to four years imprisonment, only six months of which she would have to serve in a federal correctional institution, and five years supervised probation to run from the date of her initial sentencing, April 25, 1980.

Lopez filed a writ of habeas corpus directly with this court, pleading that she had not filed with the district court because the district court had previously denied her relief on the same grounds, once when it denied her Motion to Dismiss the indictment, and again during her probation revocation proceedings. On May 26, 1982, this court dismissed the petition, directing Lopez to address her contention to the sentencing court. Lopez subsequently filed her writ of habeas corpus under 28 U.S.C. § 2255 with the district court which denied her petition. She has filed a timely appeal.

## II.

On appeal, Lopez contends that her conviction is void because the false registration of births within the State of Texas does not constitute an offense against the United States.[2]

---

1. These facts were presented by the U.S. Attorney during the defendant's *Boykin* hearing. Both Lopez and her attorney stated that this version of the facts was correct.

 We would further note, though not relevant to the issue before us, that the district judge conducted a very thorough *Boykin* hearing.

2. Lopez's first issue is stated as whether probation is a sufficient restraint on liberty to support a habeas corpus action. That question is well settled in her favor. *See, e.g., United States v. Condit,* 621 F.2d 1096, 1098 (10th Cir.1980); *Coronado v. United States Board of Parole,* 540 F.2d 216, 217 (5th Cir.1976).

A.

The statute under which Lopez pleaded guilty reads in pertinent part:

18 U.S.C. § 1425 (Procurement of Citizenship or Naturalization Unlawfully)

(a) Whoever knowingly procures or attempts to procure, contrary to law, the naturalization of any person, or documentary or other evidence of naturalization or of citizenship; or

(b) Whoever, whether for himself or another person not entitled thereto, knowingly issues, procures or obtains or applies for or otherwise attempts to procure or obtain naturalization, or citizenship, or a declaration of intention to become a citizen, or a certificate of arrival or any certificate or evidence of naturalization or citizenship, documentary or otherwise, or duplicates or copies of any of the foregoing—

Shall be fined not more than $5,000 or imprisoned not more than five years, or both. June 25, 1948.

▉▉▉ Lopez argues that 18 U.S.C. § 1425 cannot be used to support a conviction for procuring documents unrelated to a naturalization proceeding. Since the births were falsely registered without regard to any citizenship or naturalization proceeding, Lopez contends that the acts fail to fall within the purview of the statute and, therefore, the indictment failed to charge an offense against the United States.[3]

The issue in this case is thus whether a person who has aided an alien in fraudulently obtaining a state birth certificate may be convicted of violating the federal immigration laws, specifically 18 U.S.C. § 1425. This is apparently a case of first impression in any circuit on this specific question. Since 18 U.S.C. § 1425 is a criminal statute, it must be strictly construed. *United States v. Smith,* 686 F.2d 234, 239 (5th Cir.1982) (citations omitted).

**3.** We first note that Lopez pleaded guilty to one count of the indictment. Generally, a guilty plea waives all nonjurisdictional defects in the proceeding against the defendant because the plea admits all elements of the formal charge. A defendant thus has no right to relief on appeal from a plea of guilty unless he or she can show a jurisdictional defect. *See Barrien-*

▉▉ To interpret § 1425 strictly and correctly, we must look first to the language of the statute. Determining whether fraudulent procurement of a state birth certificate for an alien falls within the ambit of knowingly procuring any certificate or other evidence of naturalization or citizenship for any person not entitled thereto requires an examination and interpretation of § 1425's terms in their usual or common sense. *Williams v. United States,* —— U.S. ——, 102 S.Ct. 3088, 3092–93, 73 L.Ed.2d 767 (1982); *United States v. Smith,* 686 F.2d at 239.

The statute in question refers to "any certificate or evidence of citizenship." This and other circuits have recognized that a birth certificate may be used as "evidence of citizenship." *See United States v. Henry,* 604 F.2d 908, 916 (5th Cir.1979); *United States v. Ghaloub,* 385 F.2d 567, 570 (2d Cir.1966); *Casares-Moreno v. United States,* 226 F.2d 873, 874 (9th Cir.1955).

Moreover, the Immigration and Naturalization Service specifically recognizes birth certificates as evidence of citizenship in certain immigration proceedings when United States citizenship is based on birth in the United States. 8 C.F.R. § 204.2 (1982).

Furthermore, the First Circuit has interpreted the phrase "or other documentary evidence of naturalization or of citizenship" as covering birth certificates. *United States v. Rodriguez-Serrate,* 534 F.2d 7, 11 (1st Cir.1976). The statute at issue in *Rodriguez-Serrate,* 18 U.S.C. § 1015(c), proscribes the use of certain documentary evidence of citizenship knowing it to be false. It provides in pertinent part:

18 U.S.C. § 1015. Naturalization, citizenship or alien registry.

. . . .

(c) Whoever uses or attempts to use any certificate of arrival, declaration of intention, certificate of naturalization, certificate of citizenship or *other documentary*

*tos v. United States,* 668 F.2d 838, 842 (5th Cir.1982); *United States v. Jackson,* 659 F.2d 73, 74 (5th Cir.1981). The failure of an indictment to allege an offense is a jurisdictional defect and is not waived by a guilty plea. *United States v. Meacham,* 626 F.2d 503, 509–10 (5th Cir.1980).

*evidence of naturalization or of citizenship,* or any duplicate or copy thereof, knowing the same to have been procured by fraud or false evidence or without required appearance or hearing of the applicant in court or otherwise *unlawfully obtained;* (emphasis added).

In *Rodriguez-Serrate,* the defendant presented a false Puerto Rican birth certificate as evidence of his United States citizenship. In response to the defendant's claim that the false birth certificate which he presented to the immigration official was not the type of documentary evidence of citizenship covered by § 1015(c), the First Circuit noted:

There is ample evidence to indicate that birth certificates are routinely relied on by Puerto Rican officials to determine alien or citizen status. Consequently, appellant's presentment of the certificate in support of a claim of citizenship when he knew it to be based on false information *clearly places it among those documents whose use Congress meant to bar* through enactment of the statute.

*Rodriguez-Serrate,* 534 F.2d at 11. (Emphasis added.)

A normal, ordinary, and logical reading of the language of § 1425, bolstered by our analysis of legal precedent, convinces us that a birth certificate is such "other evidence of citizenship," the unlawful procurement of which implicates the felony provisions of § 1425.

### B.

■ Lopez asserts, however, that *Rodriguez-Serrate* is distinguishable because in that case the alien himself falsely represented himself to be an American citizen by using a false birth certificate, and here the only conduct charged was Lopez's falsely registering births. Lopez relies on *United States v. Adielizzio,* 77 F.2d 841 (2d Cir.

1935), to support her allegation that to maintain a conviction for procuring documents under 18 U.S.C. § 1425, the documents must be related to naturalization proceedings.

These arguments fail for several reasons. Our discussion of *Rodriguez-Serrate* relates to the interpretation of the words "or other evidence of naturalization or of citizenship" as found in both 18 U.S.C. § 1425, the statute in question, and 18 U.S.C. § 1015(c), the statute construed by the First Circuit. Since we can find no reported cases interpreting those words in 18 U.S.C. § 1425, our resort to another circuit's interpretation of a similar immigration statute containing the same words is helpful to our analysis. *Cf. United States v. Smith,* 686 F.2d at 240.

Secondly, Lopez was charged with wilfully and knowingly procuring documentary evidence of United States citizenship for a Mexican alien, Francisco Manuel Romo Vigil, knowing that he was not entitled thereto, not merely with falsely registering births.

Finally, in regard to Lopez's contention that the documents involved must be related to naturalization proceedings, we note that *Adielizzio* on which Lopez relies for support, involved 18 U.S.C. § 139 which was repealed in 1948 [4] and which is not related to the issue at hand.[5]

### C.

We must next review the legislative history to determine whether the scope of the statute *sub judice* has been exceeded by the prosecution. In *United States v. Smith,* this court noted that "[i]t is for Congress to say what shall be a crime and how that crime shall be punished; it is not the prerogative of this Court." 686 F.2d at 239. *Williams v. United States,* requires that we resolve the issue in favor of a defendant if we have doubt that Congress intended for the conduct in question to be covered by the

---

**4.** Act of June 25, 1948, ch. 645, 62 Stat. 683 (1948).

**5.** In *Adielizzio,* the defendants had obtained fraudulent seamen's certificates. The Second Circuit found that seamen's certificates were designed for the protection of American seamen against impressment into service on Brit-

ish ships, that such certificates were not certificates of citizenship nor were they used in any step of a naturalization proceeding, and that the proscription by 18 U.S.C. § 139 against "use of any certificate of citizenship knowing the same to be forged or unlawfully obtained" referred only to certificates of naturalization. *Adielizzio,* 77 F.2d at 843–44.

statute. *Williams,* 102 S.Ct. at 3093; *United States v. Smith,* 686 F.2d at 249 n. 25.

Lopez argues that nothing in the legislative history of 18 U.S.C. § 1425 evidences an intention to include state birth certificates as "other evidence of citizenship." The government, as may be expected, argues to the contrary.

The statute at issue derives from two major revisions of the immigration laws, the Naturalization Act of 1906 (Act of June 29, 1906, 34 Stat. 596), and the Nationality Act of 1940 (Act of October 14, 1940, 54 Stat. 1163). A review of the legislative debates on the 1906 Naturalization Act reveals that the primary concerns of Congress at the time were the widespread fraud and abuse involved in the naturalization of aliens and a distrust of the state courts' involvement in naturalization proceedings. The practice in many large cities was for thousands of aliens to be naturalized fraudulently immediately prior to election day. There was a nearly uniform belief that the state courts contributed to most of the fraudulent practices, and an effort was made to restrict naturalization proceedings to federal courts. That effort failed, however, primarily out of concern for the convenience of those aliens who legitimately deserved to receive their citizenship. This effort was replaced by a compromise that would restrict jurisdiction to federal courts and to those state courts which had unlimited jurisdiction.

Even though the Fifty-Ninth Congress concentrated on the abuses involved in obtaining naturalization, it was not unaware of the importance of birth certificates in this area. The age of an alien was an important determinant in the procedures necessary to gain naturalization. An alien under the age of eighteen who entered the United States with his parents could be naturalized by the naturalization of his father. An alien over that age was required to fulfill all of the naturalization requirements. 40 Cong.Rec. H3642 (daily ed. March 9, 1906) (statement of Rep. Bonynge).

Age was also important in the identification of the alien. Most of the fraudulent practices in alien naturalization involved perjury, false impersonation, and use of counterfeit certificates of naturalization. S.Rep. No. 4373, 59th Cong., 1st Sess., 2 (1906). In an effort to stem this abuse, the new law required an alien to obtain a certificate of registry which would be given to him when he landed in the United States. That certificate, as well as his declaration of intention, would contain a description of the alien, and both were required to be attached to his petition for naturalization. 40 Cong.Rec. H3644 (daily ed. March 9, 1906) (statement of Rep. Bonynge).

In describing the certificate of registry, Joel Marks, Assistant United States Attorney of New York stated:

> With respect to this question of identification by means of a certificate from the Commissioner of Immigration, that certificate will absolutely and correctly give the age of the immigrant, because in all foreign countries except England ... no man can leave without obtaining a passport, and of course the passport is issued on the certificate of his birth, and certain other papers; so that when he comes to the Port of New York he has in his possession a passport which correctly gives the date of his birth.
>
> Consequently at the first step in his process of becoming a citizen, we have the correct date of his birth; ... we have on record the correct date, not from the man's memory, not as he and his friends would wish us to have it, but as it actually appears from the certificate of his birth at the place where he was born.... By means of this certificate, we know exactly the date on which the man was born; and no man can then say that he arrived in the United States under the age of eighteen if such was not the case. That is the object of the certificate, in addition to furnishing the description of the alien, which prevents any possibility of any mistake being made as to his age at the time of arrival.

40 Cong.Rec. H7037 (daily ed. May 17, 1906) (read into the record by Rep. Goulden).

Even though the 1906 Act dealt exclusively with naturalization, it is clear that at that early date, Congress considered a viola-

tion of the naturalization laws to be a federal offense; it mistrusted the ability of state courts to enforce a violation of the naturalization laws; and it considered a birth certificate an important source of information for the immigration certificate.

The first appearance of the current statute's language concerning "evidence of citizenship" appeared in the Nationality Act of 1940.[6] The purpose of the 1940 Act was "to revise and codify the nationality laws of the United States in a comprehensive nationality code ... to amend the law with a view to making it more workable and to strengthen it where experience has found it to be weak ... and to provide for a tightening up as well as a definite enforcement of our nationality laws." 86 Cong.Rec. 11947 (1940) (statement of Rep. Rees).

The codification consisted of five chapters: Chapter I—Definitions; Chapter II—Nationality at Birth; Chapter III—Nationality Through Naturalization; Chapter IV—Loss of Nationality; Chapter V—Miscellaneous. The Act provided two methods by which a person could become a citizen of the United States. The first is citizenship at birth, most notably by being born in the United States and subject to the jurisdiction thereof. Chapter II. The second method is by naturalization under Chapter III of the Act. Citizenship is automatic in the first case; for naturalization, however, the alien must petition for citizenship.

Lopez contends that the 1940 Nationality Act listed the types of documentary evidence of citizenship to which the statute was directed[7] and that there is no mention

6. The pertinent portions of the 1940 Act which were incorporated into 18 U.S.C. § 1425 are:

> Sec. 346. (a) It is hereby made a felony for any alien or other person, whether an applicant for naturalization or citizenship, or otherwise, and whether an employee of the government of the United States or not—
>
> . . . . .
>
> (2) Knowingly to procure or attempt to procure—
> a. The naturalization of any such person, contrary to the provisions of any law; or
> b. Documentary *or other evidence of naturalization or of citizenship* of any such person, contrary to the provisions of any law.
> (3) To procure or attempt to procure any documentary evidence or *other evidence of naturalization or of citizenship* of any person knowing or having reason to believe that such person is not entitled thereto.
> (4) To encourage, advise, aid or assist any person—
>
> . . . . .
>
> f. Not then entitled or qualified under this Act to obtain such documentary or *other evidence of naturalization or of citizenship,* with knowledge that such person was not then so entitled or qualified.
> (5) To encourage, aid, advise, or assist any person not entitled thereto to obtain, accept, or receive any certificate of arrival, declaration of intention, certificate of citizenship, or *other documentary evidence of naturalization or of citizenship*
> a. Knowing the same to have been procured by fraud; or
>
> . . . . .
>
> (7) Knowingly, contrary to the provisions of this Act—
>
> . . . . .

> b. To assist in or be a party to the issuance of a certificate of arrival, declaration of intention, certificate of naturalization, certificate of citizenship or any other documentary evidence of naturalization or of citizenship.

Act of October 14, 1940. ch. 876. § 346, 54 Stat. 1163, 1164, 1167 (emphasis added).

7. The penal provisions of the 1940 Act were found in section 346. Lopez cites portions of two of the thirty-four paragraphs therefrom as dispositive of the "documentary evidence of citizenship" issue. The first, § 346(5) was included in the current version of 18 U.S.C. § 1425. The second, § 346(9) was not. The two paragraphs read in pertinent part:

> Sec. 346. (a) It is hereby made a felony
>
> . . . . .
>
> (5) To encourage, aid, advise, or assist any person not entitled thereto to obtain, accept, or receive any certificate of arrival, declaration of intention, certificate of citizenship, or other documentary evidence of naturalization or of citizenship
>
> . . . . .
>
> b. Knowing the same to have been procured by the use or means of any false name or false statement given or made with the intent to procure the issuance of such certificate of arrival, declaration of intention, certificate of naturalization, or certificate of citizenship, or other documentary evidence of naturalization or of citizenship; or
>
> . . . . .
>
> (9) Falsely to make, forge, or counterfeit any oath, notice, affidavit, certificate of arrival, declaration of intention, certificate of naturalization, certificate of citizenship, or any other documentary evidence of naturalization or of citizenship, or any order, record, signa-

of state birth certificates in naturalization proceedings. We do not read the statute so narrowly, especially in view of the two methods of obtaining citizenship. Moreover, had Congress intended to list every document covered by the Act, it would not have been necessary to add the phrase "other evidence of citizenship." Finally, both this court and the First Circuit have held that birth certificates are evidence of citizenship under the penalty provisions of the 1940 Act.

The penal provisions of the 1940 Act found in section 346 made each of thirty-four separate acts a felony violation of the nationality laws. Each separate act was placed in a separate paragraph under section 346(a). Five of those paragraphs were consolidated into 18 U.S.C. § 1425.[8] Another of the thirty-four violations [9] formed the basis of 18 U.S.C. § 1015, the statute at issue in *Rodriguez-Serrate* wherein the First Circuit found that birth certificates were "other documentary evidence of citizenship" included in the Act. *Rodriguez-Serrate,* 534 F.2d at 11. *See supra* part II A. Finally, an earlier panel of this court, in interpreting another portion of the penalty provisions of the 1940 Act [10] hesitated not at all to find that the "presentation of a false birth certificate by an alien as evidence of asserted citizenship would constitute a violation of [18 U.S.C. § 911]." *United States v. Henry,* 604 F.2d 908, 916 (5th Cir.1979).

In view of the legislative history and the earlier interpretations of the penal provisions of the 1940 Act, we conclude that a birth certificate is such "other evidence of

citizenship" and that its fraudulent procurement as proof of United States citizenship for an alien is proscribed by 18 U.S.C. § 1425. In other words, the scope of the statute has not been exceeded by this prosecution.

D.

Lopez finally contends that the registration of birth certificates has always been an area of state regulation in Texas, and that to apply § 1425 to the fraudulent registration of birth certificates would render a wide range of conduct related to other documents traditionally regulated by the state, violative of federal law. In *Williams v. United States* the Court stated:

> Given this background—a statute that is not unambiguous in its terms and that if applied here would render a wide range of conduct violative of federal law, a legislative history that fails to evidence congressional awareness of the statute's claimed scope, and a subject matter that traditionally has been regulated by the state—we believe that a narrow interpretation of [the statute] would be consistent with our usual approach to the construction of criminal statutes.

*Williams,* 102 S.Ct. at 3095.

Lopez argues that this language of *Williams* requires that we read the immigration laws as excluding birth certificates from "other evidence of citizenship." The *Williams* Court, however, continued: "The rule of lenity does not give courts license to disregard otherwise applicable enactments." *Williams,* 102 S.Ct. at 3095.

---

ture, or other instrument, paper, or proceedings, required or authorized by any law relating to naturalization or citizenship.

**8.** 18 U.S.C. § 1425 derived from a consolidation of section 346(a), paras. 2–5 and para. 7. *See supra* note 6.

**9.** 18 U.S.C. § 1015(c) was based on section 346(a)(16) which reads:
[it shall be a felony for any person]
 (16) To use or attempt to use any certificate of arrival, declaration of intention, certificate of naturalization, certificate of citizenship, or other documentary evidence of naturalization or of citizenship heretofore or

which may hereafter be issued or granted, knowing the same to be forged, counterfeited, or antedated, or to have been procured by fraud or by false evidence, or without appearance or hearing of the applicant in court where such appearance or hearing are required, or otherwise unlawfully obtained.

**10.** Sec. 346(a)(18) reads:
[It shall be a felony for any person]
 (18) Knowingly to falsely represent himself to be a citizen of the United States without having been naturalized or admitted to citizenship, or without otherwise being a citizen of the United States.

Unlike *Williams,* we do not have an ambiguous statute. One need not strain the ordinary and logical meaning of "other evidence of citizenship" to find that birth certificates are covered by the language. Indeed, all previous courts which have considered the question have so held.

Moreover, the legislative history of § 1425 does not fail to evidence a recognition that birth certificates would be used to provide important information leading to citizenship. The Immigration Office now requires state birth certificates in immigration proceedings wherein a person seeks to establish United States citizenship based on birth in the United States, and although the registration of state birth certificates is traditionally regulated by state law, a violation of the immigration laws has long been considered a federal offense. Moreover, the mere fact that a state criminal statute covers certain activities does not preclude the congress from making the same activities a federal crime.

Finally, Lopez cannot seriously argue that she was not fully apprised that procuring a state birth certificate for a Mexican alien to prove that he was an American citizen was a federal crime. She was not indicted merely for falsely registering state birth certificates; her crime derived from attempting to procure evidence of American citizenship for a Mexican alien, knowing that he was not entitled thereto. This conduct comfortably falls within the proscribed activities of 18 U.S.C. § 1425.

Having reviewed the statute in the light of both *Williams v. United States* and *United States v. Smith,* we conclude that "other evidence of citizenship" found in 18 U.S.C. § 1425 covers birth certificates and that the activities for which Lopez was indicted were well within the scope of the statute. We thus affirm the district court's denial of the writ of habeas corpus.

AFFIRMED.