**UNITED STATES of America,
Appellee,**

v.

**Morris LEAL, Appellant.**

**No. 74–1655.**

United States Court of Appeals,
Ninth Circuit.

Jan. 6, 1975.

Fred E. Bordallo (argued), of Bordallo & Lujan, Agana, Guam, for appellant.

Duane K. Craske, U. S. Atty. (argued), Agana, Guam, for appellee.

Before KOELSCH and SNEED, Circuit Judges, and FIRTH *, District Judge.

## OPINION

SNEED, Circuit Judge:

Appellant was convicted of the crime of importing heroin into the United States, 21 U.S.C. § 952(a) and of attempting to possess heroin with intent to distribute, 21 U.S.C. § 841(a). He was acquitted of a charge of conspiracy to import heroin, and Joseph Gumataotao, a co-defendant, was acquitted on all counts. On appeal appellant argues that the government failed to prove him guilty beyond a reasonable doubt and that the trial court erred in admitting into evidence two exhibits offered by the government. We affirm the conviction.

### I.

### Facts

On October 1, 1973, during a routine inspection of packages coming from abroad, an inspector at the Agana, Guam, post office noticed a package with the return address of Mark Swegler, Park Hotel, Hong Kong. The package was addressed to Doris Bautista, Dedeo Village, General Delivery, Agana, Guam 96910. While inspecting baggage at the Guam International Air Terminal the previous night, the inspector had found a Mark Swegler bringing heroin into the country. Therefore, she opened the package and discovered inside, *inter alia*, white powder subsequently determined to be heroin. Among the rest of the packages in the post office was another with the same return address which was addressed to Joseph Gumataotao, P.O. Box 1121, Agana, Guam, U.S.A. 96910.

The second package also contained white powder subsequently determined to be heroin. The heroin, which was concealed in a can of baby powder, was replaced with flour and the package was sprinkled with fluorescent powder before

it was delivered to Gumataotao, who claimed it at the post office on October 5, 1973. After picking up the package, Gumataotao placed it inside a white Datsun in which appellant had been waiting and the two drove away. Later that day they were arrested and the car was seized. Upon examination, fluorescent powder was discovered on the hands of appellant and Gumataotao and inside their vehicle.

At trial, over defense objection, the government introduced the two disputed exhibits, 21 and 22. The former consists of a letter from A. V. Shaw, the assistant director of the Hong Kong Immigration Service, certifying the movements of appellant and his wife in Hong Kong on September 20 and 21, 1973, together with photostatic copies of their arrival and departure cards. Exhibit 22 consists of the affidavit of Henry H. L. Chan, the assistant manager of the Park Hotel, Hong Kong, to which are attached the original hotel registration card and telephone booking orders of appellant and his wife, and the affidavit of Robert J. Furey, Special Agent of the Drug Enforcement Administration of the Department of Justice.

### II.

### Sufficiency of the Evidence

Appellant moved twice for a judgment of acquittal under Rule 29, F.R.Cr.P., on the ground that the evidence was insufficient to sustain a conviction. The motions were denied.

Since knowledge is an element of both counts upon which appellant was convicted, it is his contention that the government did not prove such knowledge beyond a reasonable doubt. The case against appellant is based on circumstantial evidence produced at trial, and it has been held that circumstantial evidence is sufficient to establish knowledge. United States v. Childs, 457 F.2d 173 (9th Cir. 1972). In the present case, the evidence shows the following:

---

* Honorable Robert Firth, United States District Judge, Central District of California, sitting by designation.

(1) that appellant and his wife were in Hong Kong on the date the package addressed to Gumataotao containing the heroin was mailed and they stayed only overnight;

(2) that appellant and his wife stayed at the hotel shown on the package as the address of the sender the night preceding the day the package was mailed;

(3) that appellant telephoned co-defendant Gumataotao in Guam the night before the package was mailed;

(4) that the sender's name on the package was appellant's half brother who had never been in Hong Kong;

(5) that the addressee of the package (co-defendant Gumataotao) was the same person telephoned by appellant from Hong Kong and the same person who picked up the package in Agana, Guam and who drove the car after placing the package on the seat by appellant;

(6) that the white Datsun was registered to appellant's mother;

(7) that the outer wrapping of the package which contained the heroin was found alongside a road in an area where appellant was reported to have been;

(8) that the vehicle appellant used contained white powder similar to the flour placed in the package which had contained the heroin;

(9) that the vehicle appellant used contained fluorescent powder which had been placed on the package containing the heroin;

(10) that appellant's hands showed traces of fluorescent powder which was of the type which had been placed on the package containing the heroin; and

(11) that the vehicle was located in front of appellant's residence on the day that the package was delivered.

■ Hernandez v. United States, 300 F.2d 114 (9th Cir. 1962), upon which appellant relies, is inapposite here. In that case the trial court found that there was no proof that the defendant personally had knowledge that the heroin was illegally imported and no proof that he personally had possession of the narcotics from which such knowledge could be presumed. The Hernandez court excluded from the reach of its holding "those whose knowledge of the illegal importation of the narcotic drugs can be shown by direct or circumstantial evidence, without reliance upon the presumption based upon possession." Id. at 124. Thus in the case at bar, where the requisite knowledge can be established by circumstantial evidence, appellant is outside the scope of the Hernandez ruling.

■ The test to be applied by the trial court in deciding a motion for acquittal in a criminal case and the test to be applied by an appellate court in reviewing that decision are, as a practical matter, identical. The evidence must be taken in the light most favorable to the verdict. United States v. Nelson, 419 F.2d 1237 (9th Cir. 1969). The court must be "satisfied that the jurors reasonably could decide that they would not hesitate to act in their own serious affairs upon factual assumptions as probable as the conclusion that" a criminal defendant is guilty as charged. United States v. Felix, 474 F.2d 610, 612 (9th Cir. 1973); United States v. Nelson, supra, 419 F.2d at 1245. Applying this standard of review to the case before us, we affirm the denial of the motions for acquittal since the evidence presented is sufficient to sustain the conviction.

### III.

#### Admission of the Disputed Exhibits

■ The official documents exception to the hearsay rule, which was recognized at common law, permits the introduction, for the proof of the facts stated therein, of all documents prepared by public officials pursuant to a duty imposed by law or required by the nature of their office. Olender v. United States, 210 F.2d 795, 801 (9th Cir. 1954). The provisions for proving official records, "when admissible for any purpose," are found in Rule 44, F.R.Civ.P., which is made applicable in criminal trials by Rule 27, F.R.Cr.P. Rule 44(a)(2),

set out in the margin,[1] addresses itself to the authentication of foreign official documents.

### A. Exhibit 21.

Appellant contends that Exhibit 21 was improperly admitted on the ground that it was not authenticated in accordance with the procedures set out in Rule 44. Rule 44(a)(2) clearly applies to attested copies, as well as to original records. The rule requires, however, that such a copy be accompanied by a final certification as to the genuineness of the signature and official position of the attesting person. The final certification must be made by a diplomatic official of the United States or diplomatic or consular official of the foreign country assigned or accredited to the United States. This certification is absent with respect to the immigration records, as Mr. Shaw refused to go to the American Embassy, and chose instead to follow the procedure of his own government for authenticating documents, viz., to write a letter on his stationery attesting that the copies were taken from the original documents, and merely signing the letter.

According to appellant, the lack of certification is fatal to the government's attempt to authenticate the immigration records. The final sentence of Rule 44(a)(2) however, provides:

> If reasonable opportunity has been given to all parties to investigate the authenticity and accuracy of the attested documents, the court may, for good cause shown, (i) admit an attested copy without final certification . . . .

This provision was added in the recognition that "in some situations it may be difficult or even impossible to satisfy the basic requirements of the rule. . . . [T]he foreign officials may not cooperate. . . ." Advisory Committee's Note to Rule 44, 39 F.R.D. at 116.

The government has, in this case, made a sufficient showing of good cause. In an attempt to comply with the final certification procedure, they urged the immigration officer to appear at the United States Embassy, but there was no way that they could compel him to do so. When he refused to follow any procedures for authentication except those of his own government, copies of the desired records were obtained in accordance with those procedures.

We conclude that the government did all that could be done under the circumstances, that the probative value of the documents obtained was not undermined by the failure to obtain a final certification, and that a showing of good cause has been made out. This court has upheld the discretion of a trial judge to admit a foreign official record lacking final certification even absent a showing of good cause. United States v. Pacheco-Lovio, 463 F.2d 232 (9th Cir. 1972). Furthermore, appellant cannot claim that he was prevented from investigating the authenticity and accuracy of the immigration records; at least no such claim was raised below. Thus, we hold that Exhibit 21 was properly admitted under Rule 44(a)(2).

---

1. Rule 44(a) provides:

(2) Foreign. A foreign official record, or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof; or a copy thereof, attested by a person authorized to make the attestation, and accompanied by a final certification as to the genuineness of the signature and official position (i) of the attesting person, or (ii) of any foreign official whose certificate of genuineness of signature and official position relates to the attestation or is in a chain of certificates of genuineness of signature and official position relating to the attestation. A final certification may be made by a secretary of embassy or legation, consul general, consul, vice consul, or consular agent of the United States, or a diplomatic or consular official of the foreign country assigned or accredited to the United States. If reasonable opportunity has been given to all parties to investigate the authenticity and accuracy of the documents, the court may, for good cause shown, (i) admit an attested copy without final certification or (ii) permit the foreign official record to be evidenced by an attested summary with or without a final certification..

## B. *Exhibit 22.*

 Appellant also claims that it was error for the trial court to admit Exhibit 22. The admission of documents under the business records exception to the hearsay rule, as codified in 28 U.S.C.A. § 1732, the Federal Business Records Act, is permissible in a criminal trial and this court has held that 28 U.S.C.A. § 1732 does not violate the right of a criminal defendant under the Sixth Amendment to confront the witnesses against him. United States v. Haili, 443 F.2d 1295 (9th Cir. 1971). Under the federal Business Records Act the person who actually makes the records need not testify, but the requisite foundation for their admission must be laid through the testimony of someone who is sufficiently familiar with the practices of the business involved to testify that the records were made in the regular course of business and thus, to verify their authenticity. United States v. Rosenstein, 474 F.2d 705, 710 (2d Cir. 1973); United States v. Dawson, 400 F.2d 194, 198–99 (2d Cir. 1968), cert. denied, 393 U.S. 1023, 89 S.Ct. 632, 21 L.Ed.2d 567 (1969).

Appellant argues that Exhibit 22 should not have been admitted on the ground that no proper foundation was laid in as much as the government called no one connected with the Park Hotel to testify to its record-keeping practices. Although the Park Hotel employees in whose custody the records were kept were willing to release the originals to the government, no one who could quali-fy as a custodian would travel to Guam to testify and the government had no power to compel the hotel employees to go.

Instead, the government followed what in essence is the Rule 44(a)(2) procedure for proving foreign official records to attempt to authenticate the business records of the Park Hotel. Henry Chan, the assistant manager of the hotel, gave a sworn statement before the United States Vice Consul in Hong Kong explaining that he chose not to go to Guam to testify; describing the contents of the attached original hotel records; attesting that he was the official custodian thereof and that the documents had been prepared or witnessed by himself or by persons under his authority and had constantly been in the Park Hotel under his supervisory control; and stating that they constituted records prepared in the normal course of business of the hotel.

 In view of the fact that none of the hotel employees could be subpoenaed to testify, we hold that the government action in obtaining the sworn affidavit before the United States Vice Consul was justified under the circumstances. The official records analogy is far from inappropriate because many of the same guaranties of trustworthiness underlie both the official documents and the business records exceptions to the hearsay rule. Moreover, in this case the hotel registration forms are themselves a species of official records, since they are required under Hong Kong law.[2] Thus

---

**2.** Laws of Hong Kong, Chapter 115 (Ordinance No. 55 of 1971) provides, in relevant part:

17. (1) A person over the age of fifteen years who intends to stay at any premises to which this section applies shall on arriving at the premises inform the keeper of the premises of his full name and nationality.

(2) Any such person who is an alien shall also—

(a) on arriving at the premises, inform the keeper of the premises of the date of his arrival in Hong Kong, the name of the ship or airline (if any) by which he arrived and his occupation; and

(b) on or before his departure from the premises, inform the keeper of the premises of the place to which he is going. and, if he is departing from Hong Kong, of the ship or airline (if any) by which he will depart.

(3) The keeper of any premises to which this section applies shall—

(a) require all persons who stay at the premises to comply with their obligation under this section; and

(b) keep for at least twelve months a record in writing of the information given to him by any such person pursuant to this section.

we hold that Exhibit 22 was properly admitted.

We find no error in the denial of the motions for judgment of acquittal.

Affirmed.

(4) An immigration officer or police officer may inspect at any time the record kept by the keeper of any premises pursuant to subsection (3).

(5) Any information required by this section to be given by or to any person may be given by or to any other person acting on his behalf.

(6) This section applies to any premises, whether furnished or unfurnished, when lodging or sleeping accommodation is provided for reward.

(7) In this section—

"keeper" includes any person who receives another person to stay in premises, whether on his own behalf or on behalf of any other person;

"stay" means lodge or sleep, for one night or more, in accommodation provided for reward.