UNITED STATES of America, Appellee,

v.

Joseph Theodore WIGERMAN, Appellant.

No. 76–2015.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 14, 1977.

Decided Feb. 25, 1977.

Wayne T. Schoeneberg, O'Fallon, Mo., for appellant.

Barry A. Short, U. S. Atty. and Michael W. Reap, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before HEANEY, ROSS and HENLEY, Circuit Judges.

PER CURIAM.

Joseph Wigerman appeals from his conviction of transporting stolen property in interstate commerce over the value of $5,000 and of conspiring to do so in violation of 18 U.S.C. §§ 2314 and 371. We affirm the judgment of conviction.

The government's evidence showed that Wigerman and four confederates conspired to travel from Philadelphia, Pennsylvania

to St. Louis, Missouri for the purpose of burglarizing the homes of certain individuals residing in St. Louis. The stolen items included silverware, jewelry, furs and firearms. There is no dispute that the goods traveled interstate; all of the goods were transported to Philadelphia by means of Trans World Airlines Air Freight Service.

■ The appellant first contends that the evidence offered by the government was insufficient to prove that the stolen goods were worth $5,000 or more in value.[1] The appellant argues that the government adduced no proof with respect to the market value of the goods at the time and place of taking, which is the test for determining the jurisdictional amount under 18 U.S.C. § 2314. *See Cave v. United States,* 390 F.2d 58, 67 (8th Cir.), *cert. denied,* 392 U.S. 906, 88 S.Ct. 2059, 20 L.Ed.2d 1365 (1968); *Husten v. United States,* 95 F.2d 168, 171 (8th Cir. 1938). We disagree.

We have no quarrel with the proposition that the proper test is one of market value at the time of taking. However, the government offered substantial evidence that the stolen goods in this case had a market value of $5,000 or more at the time of taking. Evidence was adduced that approximately $70,000 was paid by various insurance companies with respect to claims on the stolen items. This circumstantial evidence was at least sufficient to send the question of market value to the jury. *See United States v. Ricketson,* 498 F.2d 367, 373, 375 (7th Cir.), *cert. denied,* 419 U.S. 965, 95 S.Ct. 227, 42 L.Ed.2d 180 (1974); *cf.*

*Gordon v. United States,* 164 F.2d 855, 858–859 (6th Cir. 1947).

■ The appellant also contends that the records of motel registrations, car rentals, airline shipments and a sales agreement for "criss cross directories"[2] were improperly admitted into evidence as records of regularly conducted activities under Fed.R.Evid. 803(6).[3] Again we cannot agree.

■ With respect to each challenged record, a qualified witness testified that the proffered exhibit was a record compiled in the regular course of the company's business and kept in the company's care, custody and control. Furthermore, the government established beyond any reasonable doubt that the records were trustworthy. Steve Schreiber, a confederate of the appellant who turned government's witness before trial in return for limited immunity, related the *modus operandi* of the conspiracy. Schreiber identified two automobiles, which were the subject of the car rental records, as the automobiles which were used to carry out the conspiracy. He also testified that the stolen goods were transported to Philadelphia by air freight, which corroborated the TWA Air Freight documents offered by the government.[4] Schreiber also corroborated various motel records, stating that the five conspirators stayed at motels in Kansas City, Kansas and St. Louis during the course and scope of the conspiracy. The sales agreement relating to the criss cross directories was corroborated by sales representative Harold Hunnius, who testified

---

1. 18 U.S.C. § 2314 proscribes only the transportation of goods of the value of $5,000 or more.

2. A "criss cross directory" is a directory that lists streets, roads and rural routes in a given area and corresponding telephone numbers from which a user can obtain listed telephone numbers.

3. Fed.R.Evid. 803(6) provides:
   *Records of regularly conducted activity.* A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business ac-

tivity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

4. The trustworthiness of the air freight documents was also established by the fact that the appellant's fingerprints were lifted from one of the documents.

that a man identifying himself as Mr. Wigerman called and requested the directories for the St. Louis area.[5] The records of the Edwardsville Holiday Inn, at which Wigerman and coconspirator Roche stayed during the conspiracy, were corroborated by Hunnius, who testified that the delivery of and payment for the directories were made at the motel.

We have repeatedly stated that " * * * [t]he trial court has broad discretion in determining the admissibility of documents such as business records." *United States v. Page,* 544 F.2d 982, 987 (8th Cir. 1976); *see also United States v. Calvert,* 523 F.2d 895, 911 (8th Cir. 1975), *cert. denied,* 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976). The courts have consistently invoked Fed.R. Evid. 803(6) and its predecessor, 28 U.S.C. § 1732, to admit motel records, *see, e. g., United States v. Scallion,* 533 F.2d 903, 914–915 (5th Cir. 1976), car rental records, *see, e. g., United States v. Page, supra,* 544 F.2d at 986–987, and air transportation records, *see, e. g., Rotolo v. United States,* 404 F.2d 316, 317 (5th Cir. 1968).[6]

The government established beyond any reasonable doubt that the challenged records were trustworthy. Moreover, the information was compiled from unambiguous and directly observable actions on the part of the conspirators. Under these circumstances, we hold that the trial court did not abuse its discretion in admitting the records.[7]

The judgment of conviction is affirmed.

---

5. Wigerman's statement was independently admissible as an admission by a party-opponent under Fed.R.Evid. 801(d)(2)(A). *See United States v. Porter,* 544 F.2d 936, 938 (8th Cir. 1976).

6. *See also United States v. Woods,* 518 F.2d 696, 698 (8th Cir. 1975) (gasoline invoices).

7. We reject the appellant's argument that the admission of the records violated his sixth amendment right of confrontation. The records were shown to be inherently reliable, were unambiguous and were offered merely to corroborate the direct evidence related by the confederate Schreiber. *Cf. Dutton v. Evans,* 400 U.S. 74, 87–89, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970) (plurality opinion); *Dutton v. Evans, id.,* 400 U.S. at 95–96, 91 S.Ct. 210 (Harlan, J., concurring) (dictum).