**STATE of South Dakota, Plaintiff and Respondent,**

v.

**Donald RISTAU, Defendant and Appellant.**

**No. 12844.**

Supreme Court of South Dakota.

Argued Feb. 21, 1980.

Decided March 26, 1980.

Lori Wilbur, Asst. Atty. Gen., Pierre, for plaintiff and respondent; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

William J. Srstka, Jr., Duncan, Olinger, Srstka, Lovald & Robbennolt, Pierre, for defendant and appellant; Richard A. Duncan of Duncan, Olinger, Srstka, Lovald & Robbennolt, Pierre, on brief.

FOSHEIM, Justice.

The defendant, Donald Ristau, was charged with two counts of murder. On Count I, the jury returned a verdict of not guilty by reason of insanity. The jury found the defendant not guilty of murder on Count II, but guilty of the lesser included crime of manslaughter in the first degree. The assignments of error relating to the manslaughter conviction raise three issues. We affirm.

The murder charges involve the shooting deaths of the defendant's parents, Lloyd Ristau and Jeanette Ristau, on January 12, 1979, in Pierre, South Dakota. The defendant's relationship with his parents had been somewhat strained because of his inability to hold a job or fulfill their expectations of him. On the day of the tragedy, he had been drinking following an effort in the forenoon to find a job. It appears that when he returned home in the afternoon, an argument developed with his mother. Shortly thereafter, the killings occurred. It was determined that a total of five shots were fired from the gun, all within a very short time.

■ Although the state argues otherwise, for purposes of this decision we will accept the position of defendant that the verdicts are inconsistent in that the defendant was found not guilty by reason of insanity as to one of the homicides but was found sane with respect to the other.

There is a division among the authorities with regard to whether consistency in verdicts involving multiple counts in a criminal information is necessary. A majority of states follow the landmark case of *Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932), which holds that consistency in the verdicts is not necessary.[1]

We first addressed this problem in *State v. Sinnott*, 72 S.D. 100, 109, 30 N.W.2d 455, 459 (1947), cert. denied, 334 U.S. 844, 68 S.Ct. 1512, 92 L.Ed. 1768 (1948), wherein we expressly followed the *Dunn* decision and concluded:

Conceding that the jury was inconsistent in acquitting defendants on the one count and convicting on the other, we cannot inquire into the motives which prompted the jury to so find. We hold that a verdict on several counts need not be consistent.

Some thirty years later in *State v. Gerdes*, 258 N.W.2d 839 (S.D.1977), we again held that each count is regarded as if it were a separate indictment and that consistency in a verdict is therefore unneces-

---

1. See: Annot., 18 A.L.R.3d 259 (1968).

sary.[2] We there declined the invitation to adopt the minority rule and continue to do so. *See, State v. Burkman*, 281 N.W.2d 436 (S.D.1979).

■ Shortly after the shootings occurred, the defendant called the Pierre Police Department and summoned the police to the residence. A tape recording of this call carrying the tone and quality of the defendant's voice was received in evidence for the limited purpose of focusing on the issue of the defendant's sanity at the time of the homicides. Whether the defendant actually killed his parents was not in dispute. The defendant claims the court erred in admitting the tape of the telephone call because of foundational deficiencies and certain technical defects and errors in the tape. The officer who took the recording did not testify, and no one at the police department could explain the interruptions or pauses in the recorded tape. It was admitted in evidence as an exception to the hearsay rule as a business record under the provisions of SDCL 19–16–10 [3] which applies to criminal trials by virtue of SDCL 23–1–3 and 23–44–9.[4] The police dispatcher removed the tape containing the conversation from the recording machine on the evening the tragedy occurred and turned it over to Captain Abernathy, who immediately gave it to Detective Swanson. Detective Swanson testified

that he was not present at the police station when the call came in, but that tapes such as this containing special information are not put on an open shelf and then reused as are ordinary tapes; rather, they are placed in the custody of a special officer and locked in a receptacle. He stated that he listened to the tape on the evening of January 12, 1979, and that at the time of trial, it did not appear or sound as though it had been altered in any manner. The detective further testified that since the tape was delivered to him on January 12, 1979, it had been locked up in a receptacle according to such police routine.

In *State v. Parker*, 263 N.W.2d 679 (S.D. 1978), we adopted the general rule that evidence in the form of a sound recording is admissible if authenticated by a proper foundation. The fact that a recording may not reproduce an entire conversation has usually been held not to require its exclusion; however, the recording may be rejected if the jury must speculate as to what was said. Whether to admit it is left to the sound discretion of the trial judge. *State v. Parker*, supra; See also: 29 Am.Jur.2d Evidence § 436 (1967); Annot. 58 A.L.R.2d 1024 (1958).

In *State v. Parker*, supra, there were numerous breaks in the tape; the operator of the recorder said he turned it off while

2. Counsel for appellant conceded in argument that if the defendant had been tried under separate informations, the inconsistent verdicts would not be subject to attack.

3. SDCL 19–16–10 states:
A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, is not excluded by § 19–16–4, even though the declarant is available as a witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this section includes business, institution, association, profession, occupation, and

calling of every kind, whether or not conducted for profit.

4. SDCL 23–1–3 provides:
All of the provisions of titles 15, 16, 19, 21 and 30, so far as consistent herewith, shall be applicable throughout this title except as to matters for which a different provision is made in this title or where from the context of this entire title or of any particular section of it a different intention plainly appears or where reasonable application of this title to the matter involved otherwise plainly requires.
SDCL 23–44–9 provides:
The rules of evidence in civil cases are applicable also to criminal cases, except as otherwise provided in this title.
These statutes were repealed by 1978 S.D.Sess. Laws, ch. 178, § 577, effective July 1, 1979. See SDCL 23A–22–2 for reenactment of former SDCL 23–44–9.

"kidding around" or talking about music or the weather. We there held that a showing that the person making the recording could control it by pressing a button to turn it off and that he had interrupted the recording for various reasons from time to time was not sufficient to require its exclusion where the evidence established that all pertinent parts of the conversation had been taken down. For the limited purpose for which the tape was introduced into evidence, the unexplained pauses and interruptions did not require its rejection as speculative. In *State v. Anderson*, 159 N.W.2d 809 (Iowa 1968), the officer testified that the tape offered in evidence had been securely stored, had not been altered in any way, and was an accurate and complete copy of the information on the belt. The trial court apparently found that the record was made in the regular course of business; that it was made at or about the time of the act, and that the source or information from which the record was made, and the method and circumstances of its preparation, were such as to indicate its trustworthiness. Upon that foundation, the trial court admitted the evidence and the Supreme Court of Iowa was satisfied that the trial court did not err in holding that this evidence came within the purview of the business records act and that a proper foundation for its admission was established under that statute as an exception to the hearsay rule. We agree with the conclusions of the Iowa Court that the trial court has considerable discretion as to the admissibility of evidence under the business records exception and that if the trial court finds that the evidence offered complies with the requirements of the statute, it is generally admissible, and the weight thereof is for the jury. In this case, there does not seem to be any serious question that the tape was a part of the business records of the police department. A prima facie showing of continuity from the time the tape was taken from the recorder until it was introduced into evidence was established. The trial court act-

ed within its discretion in determining that a proper foundation had been laid under the provisions of SDCL 19–16–10.

■ The court refused the defendant's proposed instructions concerning the definition of mental illness. The defendant argues that the definition as adopted by the legislature and followed by this court unduly restricts the application of modern psychiatric techniques to analysis of criminal behavior because it ignores the situation where an accused, because of a mental disease or defect, could not help or restrain himself from committing the act in question. It is urged that the Court should now correct this archaic rule.

The test as to whether a person lacks the capacity to commit a crime because of mental illness is statutorily imbedded in this state.[5] SDCL 22–3–1(4) states in part:

All persons are capable of committing crimes except those belonging to the following classes:

. . . . .

(4) Persons who, at the time of committing the act charged against them, were mentally ill.

SDCL 22–1–2(22) defines "mentally ill" as:

[T]he condition of a person temporarily or partially deprived of reason, upon proof that at the time of committing the act charged against him, he was incapable of knowing its wrongfulness.

Essentially the same defense now urged by the defendant was asserted shortly after statehood in *State v. Leehman*, 2 S.D. 171, 49 N.W. 3 (1891). We there noted that in most states at that time the test was whether a person has sufficient capacity and reason to enable him to distinguish between right and wrong and whether he is conscious that the act he is doing, or is about to do, is a wrong and forbidden act and one that he ought not do.

In *State v. Violett*, 79 S.D. 292, 111 N.W.2d 598 (1961), we stated that the

5. The test as it exists now was first enacted in 1877 Revised Dakota Territory Laws; Penal Code, § 16.

"right and wrong" test established in the *M'Naghten* Case, 8 English Reprint 718, and in substance enacted by statute in this state, is our recognized rule of testing criminal responsibility. See also, *State v. Behan*, 80 S.D. 370, 124 N.W.2d 179 (1963); *Magenton v. State*, 76 S.D. 512, 81 N.W.2d 894 (1957). In *State v. Waugh*, 80 S.D. 503, 127 N.W.2d 429 (1964), we concluded that since the *M'Naghten* rule is of statutory origin in this state, any changes therein must come from the legislature.

Finally, in *State v. Kingston*, 84 S.D. 578, 174 N.W.2d 636 (1970), and *State v. Kiehn*, 86 S.D. 549, 199 N.W.2d 594 (1972), it was suggested that we abandon the *M'Naghten* rule and adopt in its place either the *Durham* rule, articulated in *Durham v. United States*, 94 U.S.App.D.C. 228, 214 F.2d 862 (D.C. Cir. 1954), *overruled* in *United States v. Brawner*, 153 U.S.App.D.C. 1, 471 F.2d 969 (D.C. Cir. 1972),[6] or the rule formulated by the American Law Institute appearing in the Model Penal Code. We declined that invitation, referred to our decision in *State v. Waugh*, supra, and again concluded that because it was a legislative enactment, any change in the rule should come from the legislature.[7] We adhere to that position.

We have considered the other arguments of defendant relating to the mental illness test and find them to be without merit.

The judgment of conviction is affirmed.

All the Justices concur.

---

**6.** In *Brawner*, the United States Court of Appeals for the District of Columbia formally adopted the ALI insanity definition.

**7.** The legislature adopted the ALI definition in 1976 S.D.Sess. Laws, Ch. 158, § 1–1. This statute, however, was repealed by 1977 S.D. Sess. Laws, Ch. 189, § 11, and the legislature essentially re-enacted the *M'Naghten* rule.