**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Lawrence VENTLING, Defendant and Appellant.**

**No. 16609.**

Supreme Court of South Dakota.

Considered on Briefs Nov. 30, 1989.

Decided Feb. 21, 1990.

Craig M. Eichstadt, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on the brief.

Timothy J. Vander Heide, Custer, for defendant and appellant.

SABERS, Justice.

Lawrence Ventling (Ventling) appeals his conviction for the offense of compounding a felony under SDCL 22–11–10. We reverse.

### FACTS

In February 1988, Ventling entered into an option to purchase three mining claims owned by Anna Marie Ferguson (Ferguson) and her son. Ventling paid the owners $500 for the option which he could exercise by an additional payment of $5,500. As part of the option, the owners agreed that Ventling could remove "samples" of rose quartz from the mines for testing.

During the spring of 1988, Ventling removed a large quantity of rose quartz from the mines. Estimates during trial on the amount of quartz removed ranged from 20 to 41 tons. Further, estimates on the value of the quartz removed depended on quality and ranged from $.25 to $1.00 per pound. Based upon these figures, the total value of the quartz removed ranged from $10,000 to $82,000.

During the period of Ventling's option, it came to Ferguson's attention that Ventling was mining the mines. A dispute ensued between Ferguson and Ventling over the matter. On August 2, 1988, Ferguson caused a document to be served on Ventling attempting to terminate his option and notifying him that there should be no further trespass on mine property. Ferguson also reported the removal of the quartz to the county sheriff's office which proceeded to investigate the matter.

On October 17, 1988, Ventling phoned Ferguson's realtor, who had arranged for Ventling's option on the mining claims, and informed her that he was tired of the trouble going on over the removal of the quartz. Ventling told the realtor that he was prepared to offer the owners $6,000 [1] to forget the whole thing. The realtor relayed this information to Ferguson and Ferguson, in turn, reported the offer to the sheriff's office.

The next day, on October 18, 1988, Ferguson phoned Ventling while a sheriff's deputy prepared to tape record the conversation with Ferguson's consent. Ventling was not available, but a message was left and Ventling returned the call a short time later. This conversation was recorded. During the conversation, Ventling offered Ferguson $6,000 if she would withdraw her complaint with the sheriff's office. Ferguson replied that she needed time to think the offer over.

On October 20, 1988, state filed a complaint charging Ventling with the offense of compounding a felony (SDCL 22–11–10).[2] A court trial was held on January 26, 1989. At the close of state's case and at the close of all the evidence, Ventling made motions for judgment of acquittal. Ventling's motions were denied and he was found guilty. Ventling appeals.

---

1. Although this was the original purchase price for the mining claims, it is unclear whether the $6,000 would have included or been in addition to the $500 Ventling already paid for his option.

2. A complaint was also filed on December 19, 1988, charging Ventling with one count of grand theft under SDCL 22–30A–1 and SDCL 22–30A–17(1). Pursuant to SDCL 23A–44–2, state voluntarily dismissed this complaint "without prejudice" on April 5, 1989.

## ISSUE

WHETHER THE TRIAL COURT ERRED IN DENYING VENTLING'S MOTIONS FOR ACQUITTAL BECAUSE THE GIVER OF CONSIDERATION CANNOT BE CONVICTED OF COMPOUNDING A FELONY UNDER SDCL 22–11–10?

## DECISION

Ventling was convicted of compounding a felony under SDCL 22–11–10:

Any person who *accepts, or offers or agrees to accept* any pecuniary benefit as consideration for:

(1) Refraining from seeking prosecution of an offender; or

(2) Refraining from reporting to law enforcement authorities the commission or suspected commission of any crime or information relating to a crime;

is guilty of compounding. Compounding a felony is a Class 6 felony. Compounding a misdemeanor is a Class 1 misdemeanor. (emphasis added).

Based upon the common law history of the offense of compounding a crime and the statutory language quoted above, Ventling contends that his actions did not fall within the elements of the offense because he would have been the giver and not the recipient of consideration for refraining from a criminal prosecution. In response, state points to the word "offers" in the first sentence of SDCL 22–11–10 and argues that Ventling clearly "offered" consideration to Ferguson in exchange for her withdrawal of her criminal complaint. Accordingly, state asserts that Ventling was properly convicted for the compounding offense.

Our decision turns solely on the interpretation of the emphasized language of SDCL 22–11–10 quoted above. If, as state argues, the word "offers" stands alone, then Ventling was properly chargeable for compounding given his "offer" of $6,000 to Ferguson. However, if, as Ventling argues, the word "offers" relates to the words "to accept," then Ventling was erroneously convicted because he did not "offer to accept" consideration from Ferguson.

Interpretation of the statute is a question of law and this court accords no deference to the trial court's interpretation. *Border States Paving v. Dept. of Revenue,* 437 N.W.2d 872 (S.D.1989).

■ In construing a statute, our purpose is to discover the true intention of the law and that intention must be ascertained primarily from the language expressed in the statute. *State v. Byrd,* 398 N.W.2d 747 (S.D.1986). The intent of the law must be derived from the statute as a whole and by giving the statutory language its plain, ordinary and popular meaning. *American Rim & Brake, Inc. v. Zoellner,* 382 N.W.2d 421 (S.D.1986).

■ In giving SDCL 22–11–10 its plain, ordinary meaning, it is clear that the statute prohibits only the receipt of consideration for refraining from a criminal prosecution. It is particularly noteworthy that the word "offers" in the statute is not separated as is the word "accepts," in defining persons chargeable with the offense. Rather, the words "offers or" are interposed between the words "accepts, or" and the words "agrees to accept". The positioning of the word "offers" between two references to *accepting* consideration strongly supports Ventling's argument that the statute must be read as referring to persons who "offer to accept" consideration. Furthermore, under this reading, all phases of a person's *receipt* of consideration for refraining from a criminal prosecution are prohibited. This includes actual acceptance of consideration, an agreement to accept consideration in response to the offer of another, and initiation of the offense by contacting another and "offering to accept" consideration.

Moreover, the above interpretation of SDCL 22–11–10 is consistent with the affirmative defense outlined under SDCL 22–11–11:

It is an affirmative defense to prosecution under § 22–11–10 that *the benefit received* by the defendant did not exceed an amount which the defendant reasonably believed to be due as a restitution or

indemnification for harm caused by the crime. (emphasis added).

This statute contemplates that a defendant under SDCL 22-11-10 must be a *recipient* of consideration. State concedes that the defense would be inapplicable to a person who gives consideration. Thus, we consider SDCL 22-11-11 as modifying the effective scope of SDCL 22-11-10. *See, Border States Paving, supra.* Further, we must read SDCL 22-11-10 and 22-11-11 in harmony so as to give both provisions effect. *See Meyerink v. Northwestern Public Service Co.,* 391 N.W.2d 180 (S.D.1986). Since state's interpretation of SDCL 22-11-10 would render SDCL 22-11-11 nugatory in such cases, Ventling's contention that SDCL 22-11-10 applies only to recipients of consideration must prevail.

In reaching this conclusion, we are unpersuaded by state's contentions concerning interpretation of SDCL 22-11-10 under the rule of statutory construction known as the doctrine of the last antecedent. The doctrine provides that, "[i]t is the general rule of statutory as well as grammatical construction that a modifying clause is confined to the last antecedent unless there is something in the subject matter or dominant purpose which requires a different interpretation." *Kaberna v. School Bd. of Lead-Deadwood,* 438 N.W.2d 542, 543 (S.D.1989) (*quoting, Lewis v. Annie Creek Mining Co.,* 74 S.D. 26, 33, 48 N.W.2d 815, 819 (1951)). We have previously applied this doctrine in resolving ambiguity created in a statute by application of two possible modifying clauses to a single, subsequent term (*Kaberna, supra*) and in qualification of several possible terms by a single, subsequent modifying clause (*Lewis, supra*). However, the purported ambiguity in SDCL 22-11-10 appears in the modifying clause itself (i.e., "Any person *who accepts, or offers or agrees to accept ...*" (emphasis added)). Therefore, the doctrine of the last antecedent provides no guidance in the present inquiry and the plain, ordinary meaning of the clause must prevail.

In summary, where the terms of a statute are plain and clear in their meaning, this court's function is to give them effect and not to amend the statute in order to avoid or produce a particular result. *State v. Ohlmann,* 444 N.W.2d 377 (S.D.1989). Here, SDCL 22-11-10 prohibits only the receipt of consideration for refraining from a criminal prosecution. In the event that the legislature determines the rule should be otherwise, it can easily amend the statute. *Ohlmann, supra.*

We hold that the trial court erred in denying Ventling's motions for judgment of acquittal. Accordingly, we reverse Ventling's conviction and find it unnecessary to address his second and third issues on appeal.

Reversed.

WUEST, C.J., and MORGAN and MILLER, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

Common law history and the law merchant cannot conflict with the will of the sovereign. SDCL 1-1-24. We have expressed that where the common law is in force, except where changed by statute or other expression of sovereign will, the rule of strict · construction of statutes in derogation of common law does not obtain in South Dakota, and this Court's function *is to effectuate legislative purpose through liberal construction.* *Scotvold v. Scotvold,* 68 S.D. 53, 298 N.W. 266 (1941). Therefore, contrary to Ventling's advocacy, common law history is *out.* There is to be liberal construction of statutes in derogation of common law. SDCL 2-14-12. The state statute is *in.* Penal statutes are not to be construed strictly, rather according to the fair import of their terms. This Court has said so on a number of occasions. *State ex rel. Strauser v. Jameson,* 76 S.D. 490, 81 N.W.2d 304 (1957); *Bartron v. Codington County,* 68 S.D. 309, 2 N.W.2d 337, 140 A.L.R. 550 (1942); *State v. Whitmarsh,* 26 S.D. 426, 128 N.W. 580 (1910).

We have, before us, a question of interpretation concerning penal legislation. There are some general statements of statutory construction which I wish to address.

Proper judicial construction of a statute requires recognition and implementation of its underlying purpose.

Under the general title of CRIMES, it is noted that SDCL 22-1-1 specifies:

The rule of the common law that penal statutes are to be strictly construed has no application to this title. All its criminal and penal provisions and all penal statutes are to be construed according to the fair import of their terms, *with a view to effect objects and promote justice.* (Emphasis supplied mine).

What was the underlying purpose of this statute? What were the mischiefs intended to be remedied? Certainly, it was to make certain *acts* criminal which totally offend society. Clearly, as we can see from the title of the statute, it was to make criminal the compounding of a felony.

I would opt that we, in the Judicial Branch, occupy a role as literate Judges or Justices in interpreting a statute, not literal Judges or Justices.

We should read the entire statute together, construe it together, and apply the words in their ordinary signification so that they do not produce an absurdity. Every word and clause should be given effect. Sutherland, Statutory Construction § 380 (2d ed. 1904); *see also, In re Terry's Estate,* 218 N.Y. 218, 112 N.E. 931 (1916). In my opinion, an absurdity is reached under the majority writing by virtue of applying a literal standard, rather than the liberal standard as announced by our State Code. As a result of the majority's literal interpretation, we have an objectionable result as a consequence.

By applying a literal force of rigidity in statutory construction, which might well trigger a more precise formula or criminal act, the majority has, in effect, cramped the intent of the legislature and the life of the penal law in this case. Put another way, this Court has placed a sharper rephrasing of the statute thereby limiting its practical effect. Such application of legal thought should not exist under SDCL 22-1-1, cited above.

In my opinion, the function of this Court should be to enforce this statute, and any other statute, according to its terms. It is a fundamental rule of statutory construction that all provisions within a statute must be given effect, if possible. *State v. Heisinger,* 252 N.W.2d 899 (S.D.1977); *Matter of Silver King Mines,* 315 N.W.2d 689 (S.D.1982). It appears to me that the majority opinion is rejecting certain language in this statute upon the basis that the language is either (a) repugnant to the rest of the statute or (b) regarded as surplusage. In its mental dissection of this statute, it is my opinion that the majority opinion has placed false statutory interpretations by initially taking into account punctuation. By doing so, the majority opinion has failed to take into consideration our state law, namely SDCL 2-14-8 which provides:

Punctuation shall not control or affect the construction of any provision when any construction based on such punctuation would not conform to the spirit and purpose of such provision.

In *Lewis v. Annie Creek Mining Co. et al.,* 74 S.D. 26, 48 N.W.2d 815 (1951) one of the all time great Circuit Judges, Robert Bakewell, wrote on behalf of this Court and expressed that " 'punctuation' as here used includes not only the use but also the absence or lack of punctuation." *Lewis,* 48 N.W.2d at 819. Rather than to consider punctuation, this Court should recognize that there are three means of committing a crime under this statute and all stand on an equal footing. My rationale is that the terms of the statute are disjunctive and thus there are crimes expressed in this statute which are independent of one another. In *Lewis,* Judge Bakewell wrote concerning the "last antecedent" rule. He expressed:

It is the general rule of statutory as well as grammatical construction that a modifying clause is confined to the last antecedent unless there is something in the subject matter or dominant purpose which requires a different interpretation. *Hopkins v. Hopkins,* 287 Mass. 542, 192 N.E. 145, 95 A.L.R. 1286. And the presence of a comma separating a modifying clause in a statute from the clause imme-

diately preceding is an indication that the modifying clause was intended to modify all the preceding clauses and not only the last antecedent one. 50 Am.Jur. 259. Here, the only antecedent for the three modifiers is "person." It is the "person" who is guilty of compounding, regardless of whether this "person" either accepts, offers, or agrees to accept any pecuniary benefit as consideration for refraining from seeking prosecution. There is nothing of the dominant purpose, of the statute we address, which dictates otherwise. From the top of the Capitol Dome, to the geese which trod upon the grass, I would herrald a message that the dominant purpose of the statute under consideration is to punish those persons who obstruct justice. Were the last antecedent rule pointing in a different direction, the messenger would still say "Hearken, the dominant purpose of the statute must prevail." We have, before us, a classic appellate error of forsaking the spirit and purpose of the state statute; through judicial interpretation, we have deserted the mischief which the statute sought to address.

SDCL 22–11–10, after the first comma expresses "or offers." Plainly, the word "or" is there. Then, the statute goes on to say after the comma "or agrees." It has thus used the word "or" for the second time before expressing "agrees to accept." The last "or" modifies "agrees to accept." The phrase "any pecuniary benefit" is modified by who "accepts" or "offers" or "agrees to accept." The word "offers" stands alone as the word "or" immediately precedes it. Therefore, by my interpretation, the sentence may be read to express: "Any person who offers any pecuniary benefit ..." I read this statute to express that "offers" relates to "any pecuniary benefit." The phrase "any pecuniary benefit" is part and parcel of the statute. It is the predicate upon which the first part of the statute acts.

Ventling, it is undisputed, made an "offer" of a "pecuniary benefit" to Ferguson in exchange for her agreement to withdraw a criminal complaint filed against him. In essence, he tried to "buy off" the complaining witness. Unfortunately, this Court has not seized upon an interpretation of the statute as a whole; rather, it has isolated certain words to give a technical construction to the statute. This statute can be read to say: "Any person who offers any pecuniary consideration to refrain from seeking prosecution of an offender is guilty of compounding." Ventling, it is undisputed, offered $6,000 to Ferguson "to forget the whole thing." I will concede that Ventling did not "offer to accept" but he was a "person" who did "offer any pecuniary benefit." And he did "refrain from seeking prosecution of an offender", the "offender" being himself. Therefore, he is guilty of compounding a felony, as determined by Circuit Judge Grosshans.

Here, the interpretation by the majority is more difficult to be understood than the statute itself. Therefore, having the conceptual itch of dissent come upon me, via, I hope, good rationale and statutory construction, I scratch my pen, voting to affirm this conviction.