STATE of South Dakota, Plaintiff
and Appellee,

v.

James Rankin BROWN, Defendant
and Appellant.

No. 17319.

Supreme Court of South Dakota.

Considered on Briefs Sept. 12, 1991.

Decided Jan. 29, 1992.

Mark Barnett, Atty. Gen., Sherri Sundem Wald, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Daniel W. Graves of Olinger, Srstka, Lovald, Robbennolt & McCahren, Pierre, for defendant and appellant.

WUEST, Justice.

James Rankin Brown (Brown) appeals his conviction for one count of perjury under SDCL 22–29–1 [1]. We affirm.

FACTS

Brown's conviction stems from sworn testimony given by him before the South

---

1. SDCL 22–29–1 provides:

Any person who, having taken an oath that he will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which such an oath may by law be administered, intentionally and contrary to such oath, states any material matter which he knows to be false, is guilty of perjury.

Dakota Board of Minerals and Environment (the board) during a contested case hearing on an application for a resource recovery permit. Brown was the president of Consolidated Management Corporation (CMC), the applicant for the permit. CMC sought the permit in furtherance of its plan to transport sewage ash into South Dakota for reprocessing into precious metals. The administrative hearing on CMC's application was conducted on October 29 and 30, 1986. During the course of the hearing, Brown gave sworn testimony concerning certain technical aspects of the process involved in refining the sewage ash. As part of the foundation for that testimony, CMC's attorney asked, "Mr. Brown, what is your educational background? What are you by education and training?" Brown's response included the statement, "I have a bachelor of science degree in geology[.]"

After the contested case hearing, the board granted CMC its resource recovery permit. Information was later relayed to the South Dakota Attorney General's office that, contrary to his testimony, Brown did not possess a bachelor of science degree in geology. A special prosecutor was appointed to investigate the matter and Brown was ultimately indicted for perjury on August 12, 1988.

On February 17, 1989, Brown filed a pretrial motion in limine:

[t]o disallow the admission in evidence of certified or authenticated copies of the transcript of [Brown's] academic records at McMaster University, for the reasons that the same are not official public records, as [contemplated] by SDCL 15–6–44(a)(2) and SDCL 19–17–4, and for the additional reason that admitting said records without having the testimony of an official from McMaster University would violate [Brown's] right to confrontation guaranteed by the Sixth Amendment to the United States Constitution, and Article 6 Section 7, of the Constitution of the State of South Dakota.

Brown also filed a pretrial motion to dismiss his indictment contending an offer by the special prosecutor to reduce the perjury charge in exchange for CMC's payment of certain financial indebtedness constituted prosecutorial misconduct. The motion was denied and Brown's jury trial proceeded on February 20 and 21, 1990.

Brown renewed his motion in limine both immediately prior to, and during the course of, his trial. Both motions were denied and state was allowed to introduce Brown's academic records into evidence. The jury subsequently convicted Brown of perjury as charged and a judgment and sentence were entered accordingly. This appeal followed.

ISSUE ONE

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN ALLOWING THE ADMISSION OF BROWN'S ACADEMIC RECORDS INTO EVIDENCE DURING TRIAL?

■ The trial court admitted Brown's academic records into evidence under SDCL 19–16–10, the business records exception to the hearsay rule:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, *all as shown by the testimony of the custodian or other qualified witness*, is not excluded by § 19–16–4, even though the declarant is available as a witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this section includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit. (emphasis added).

Notwithstanding the language of the rule emphasized above, the trial court admitted Brown's academic records without any foundation testimony from their custodian or any other qualified witness. Rather, the records were authenticated with a

written certificate of authentication signed by the Associate Registrar of Records and Associate Dean of Science of McMaster University in Hamilton, Ontario, Canada, the institution where Brown claimed he received his degree. Brown contends the admission of the records without any live foundation testimony violated his constitutional right to confront adverse witnesses under the Sixth Amendment to the Constitution of the United States and Art. VI, § 7 of the South Dakota Constitution. Accordingly, he asserts his conviction must be reversed.

■ "Firmly rooted exceptions to the hearsay rule do not violate the confrontation clause." *U.S. v. Baker*, 855 F.2d 1353, 1360 (8th Cir.1988). When admitting evidence under the business records exception to the hearsay rule, a trial court acts under such a, "firmly rooted exception." *Id.* "'[A] trial court has broad discretion in determining the admissibility of documents such as business records.'" *U.S. v. Wigerman*, 549 F.2d 1192, 1194 (8th Cir.1977) (*quoting U.S. v. Page*, 544 F.2d 982, 987 (8th Cir.1976)). *Accord, State v. Ristau*, 290 N.W.2d 487 (S.D.1980). This court will not reverse a trial court's determination concerning the admissibility of evidence under the business records exception unless an abuse of discretion has occurred. *See Ristau, supra.* This refers to a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence. *State v. Pfaff*, 456 N.W.2d 558 (S.D.1990).

The Eighth Circuit Court of Appeals has specifically observed that Fed.R.Evid. 803(6)[2], "calls for a proper foundation to be made through the 'testimony of the custodian or other qualified witness.' A proper foundation consists of *testimony* 'that a document has been prepared and kept in the course of a regularly-conducted business activity.' *Kehm v. Procter & Gamble Manufacturing Co.*, 724 F.2d 613, 626 (8th Cir.1983)." *United States v. Azure*, 801 F.2d 336, 342 (8th Cir.1986) (emphasis added). Thus, it has been held that, "'[t]he testimony of the custodian or other qualified witness who can explain the record-keeping of his organization is ordinarily essential.'" *N.L.R.B. v. First Termite Control Co., Inc.*, 646 F.2d 424, 427 (9th Cir.1981) (quoting, 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 803(6)[02] at 151–52). *Accord, Liner v. J.B. Talley And Co., Inc.*, 618 F.2d 327 (5th Cir.1980). *But see, In re Japanese Electronic Products*, 723 F.2d 238 (3rd Cir.1983), *rev'd on other grounds, Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (testimony of custodian or other qualified witness not a sine qua non of admissibility for business record evidence).[3] Further, if a witness cannot vouch that the requirements of Fed. R.Evid. 803(6) have been met, "the entry must be excluded." *Liner*, 618 F.2d at 329.

The reason for the requirement of live foundation testimony as a predicate for admission of business record evidence is clear.

> The modern theory behind [the business records] exception is that business records have a special indicia of reliability.
>
> \* \* \* \* \* \*
>
> The provision in the rule that requires that the record be supported by "the testimony of the custodian or other qualified witness" insures the presence of some individual at trial who can testify to the methods of keeping the information. If the witness is not knowledgeable as to the manner in which the

---

2. Fed.R.Evid. 803(6) is identical to SDCL 19–16–10.

3. The two cases relied upon in the special writing, *In re Japanese Electronic Products, supra* and *United States v. Leal*, 509 F.2d 122 (9th Cir.1975), appear to be a minority interpretation which stretch the clear language of the business records exception because of difficulties in obtaining live foundation testimony from witnesses in Japan and Hong Kong. The record in the instant case, however, does not establish that it was impossible, or even especially difficult, to have the custodian testify and provide the requisite foundation for admission of the business records. Rather, the record is silent on the question of why no live foundation testimony was presented.

records are made and kept, he or she cannot be subjected to meaningful cross-examination. Without cross-examination on the keeping of the records, the trier of fact would have no rational basis on which to evaluate the accuracy of the record, and therefore the trustworthiness of the evidence.

*N.L.R.B.*, 646 F.2d at 427.

In this instance, not only was there no foundation testimony or cross examination of a witness knowledgeable as to the manner Brown's scholastic records were made and kept, there was no foundation testimony from any witness whatsoever. This was in clear contravention of the explicit requirements of SDCL 19–16–10 and the authorities cited above. Accordingly, we hold the trial court abused its discretion in allowing the admission of Brown's academic records into evidence during trial.

■ However, "the admission of documentary exhibits does not warrant reversal absent a showing that substantial rights of the party were affected. The burden of demonstrating that such rights were affected rests with the party asserting error." *Liner*, 618 F.2d at 329 (citations omitted). *See also*, SDCL 19–9–3 (error not predicated on ruling admitting evidence unless substantial right of party affected). This rule coincides with the harmless error rule recognized by this court:

> SDCL 23A–44–14 defines harmless error as "[a]ny error, defect, irregularity or variance which does not affect substantial right[s]." The harmless error rule governs even constitutional violations, not requiring the automatic reversal of a conviction, provided the court is able to declare a belief beyond a reasonable doubt that the error was harmless and did not contribute to the verdict obtained.

*State v. Younger*, 453 N.W.2d 834, 838 (S.D.1990). Further, as to evidentiary matters, we have extended the harmless error rule to hold, "[w]here inadmissible evidence admitted at trial is cumulative only and other admissible evidence supports the re-sult, the cumulative evidence, though inadmissible, is non-prejudicial." *State v. Tribitt*, 327 N.W.2d 132, 135 (S.D.1982).

In this instance, Brown's academic records were merely cumulative evidence of the fact he was never awarded a bachelor's degree in geology. Brown himself admitted during trial he had never been awarded a diploma from McMaster University but that he felt he had earned a degree.[4] "Ordinarily admission of evidence is not prejudicial when the evidence is of matters conceded by the defendant." *State v. Leonard*, 243 N.W.2d 887, 891 (Ia.1976). *See also, State v. Christiansen*, 187 Neb. 73, 187 N.W.2d 303 (1971) (admission of incompetent evidence not prejudicial where same fact was established by defendant's testimony on cross examination); *State v. Burmeister*, 65 S.D. 600, 277 N.W. 30 (1937) (no prejudicial error in admission of testimony from state's witness where defendant admitted same fact on cross examination). Accordingly, we deem the erroneous admission of Brown's academic records harmless error and decline to reverse his conviction on that foundation.

### ISSUE TWO

WHETHER THE TRIAL COURT ERRED IN REFUSING TO DISMISS BROWN'S INDICTMENT FOR PROSECUTORIAL MISCONDUCT?

SDCL 22–11–10 provides:
Any person who accepts, or offers or agrees to accept any pecuniary benefit as consideration for:
   (1) Refraining from seeking prosecution of an offender; or
   (2) Refraining from reporting to law enforcement authorities the commission or suspected commission of any crime or information relating to a crime;
is guilty of compounding. Compounding a felony is a Class 6 felony. Compounding a misdemeanor is a Class 1 misdemeanor.

---

**4.** We note that Brown's appellate counsel did not represent him during his trial in circuit court.

Brown argued before the trial court that an offer by the special prosecutor to reduce the charge against him in exchange for CMC's payment of certain financial indebtedness constituted compounding as defined above and resulted in misconduct by the special prosecutor. Brown moved for a dismissal of his indictment on this basis and now appeals the trial court's denial of that motion.

This argument is lacking in merit. SDCL 22–11–10, "prohibits only the *receipt* of consideration for refraining from a criminal prosecution." *State v. Ventling,* 452 N.W.2d 123, 125 (S.D.1990) (emphasis added). Under SDCL 22–11–10, "all phases of a person's *receipt* of consideration for refraining from a criminal prosecution are prohibited. This includes actual acceptance of consideration, an agreement to accept consideration in response to the offer of another, and initiation of the offense by contacting another and 'offering to accept' consideration." *Id.* (emphasis original).

There is no evidence in this case whatsoever that the special prosecutor ever offered to *receive* consideration from Brown. Rather, the plea offer was that Brown see to CMC's payment of its indebtedness to certain creditors in exchange for a reduction of charges. There is no evidence that the special prosecutor was a creditor of CMC. Thus, in no manner did the plea offer fall within the elements of the offense of compounding as this court defined them in *Ventling, supra.* Accordingly, we find no error by the trial court in denial of Brown's motion for a dismissal of charges based upon prosecutorial misconduct.

Affirmed.

MILLER, C.J., concurs.

HENDERSON, J., concurs in part and specially concurs in part.

SABERS, and AMUNDSON, JJ., concur in result.

HENDERSON, Justice (concurring in part, specially concurring in part).

### I.

I concur on the academic discussion on Issue One.

### II.

Although I concur that the trial court properly refused to dismiss Brown's indictment for prosecutorial misconduct, *Ventling* would not be the primary authority to uphold the trial court. In *Ventling,* the prosecutor's ethics were not in question at all. Essentially, it is my position that *Ventling* is somewhat inapposite. Rather, I would focus on the thesis that this prosecutor, as any prosecutor in this state, has statutory authority to plea bargain cases with defense counsel and his client. SDCL 23A–7–8. We have recognized this in previous cases. *State v. Grosh,* 387 N.W.2d 503, 504 (S.D.1986); *State v. Rich,* 305 N.W.2d 390, 392 (S.D.1981).

Brown's brief characterized the prosecutor's offer as "a proposed plea bargain;" how, then, can Brown contend that such legitimate force in law, recognized by our State Legislature and this Court, is prosecutorial misconduct? Brown's position is ridiculous. Would he have every prosecutor in this state prosecuted for a felony for trying to implement a plea bargain? Under his theory, a prosecutor would be prosecuted for a felony, i.e. compounding, because the prosecutor in this case offered to permit Brown to plead guilty to a misdemeanor, providing Brown would reimburse creditors of CMC. This was an attempt to seek restitution for victims, a salutary, not reprehensible, legal effort.

SABERS, Justice (concurring in result).

I would affirm the trial court and hold that under these circumstances, he did not abuse his discretion in admitting these business records.

As indicated, these records were authenticated by a written certificate of authentication signed by the Associate Registrar of Records and the Associate Dean of Science of McMaster University in Ontario, Canada, the school where Brown claimed he received his degree.

At issue in *United States v. Leal,* 509 F.2d 122 (9th Cir.1975) was the propriety of

the trial court's admission of certain business records from a Hong Kong hotel during the defendant's trial for certain drug offenses. As in this case, the exhibits were admitted without foundation testimony from their custodian but with the benefit of an affidavit by the hotel manager describing the contents of the records, attesting himself as their official custodian, certifying they were prepared under his authority and further certifying they constituted records prepared in the normal course of the hotel's business. The trial court admitted the documents under the business records exception to the hearsay rule codified in the Federal Business Records Act. Under that act, just as under SDCL 19–16–10, a requisite foundation for admission of business records must be laid though the testimony of someone who is sufficiently familiar with the practices of the business to testify that the records are made in the regular course of business and, thus, to verify their authenticity.

In upholding the admission of the records in *Leal*, the Ninth Circuit observed that:

> The admission of documents under the business records exception to the hearsay rule, as codified in 28 U.S.C.A. § 1732, the Federal Business Records Act, is permissible in a criminal trial and this court has held that 28 U.S.C.A. § 1732 does not violate the right of a criminal defendant under the Sixth Amendment to confront the witnesses against him.

*Leal*, 509 F.2d at 127. As to the lack of foundation testimony for admission of the records, the circuit court noted that the government had no power to compel the hotel employees to attend trial and testify, and, therefore, had followed the procedure for authentication of foreign official records, i.e. authentication on the basis of the affidavit of the hotel's manager. The court held that in view of the fact that none of the hotel employees could be subpoenaed to testify, the government's action in obtaining the authenticating affidavit of the hotel manager was justified under the circumstances.

Given the unique circumstances of the present case, it would seem that a similar result would be in order. Brown's academic records were in the custody of a private university in Canada, a close, neighboring country but a foreign country none-the-less. Thus, testimony authenticating the records could not be procured by the normal route of a subpoena. Accordingly, state obtained only the written authentication of the records from the Associate Registrar and Associate Dean of Science of the University. The Registrar certified himself as keeper of the records, seal and files of the University and certified the records he provided as true and correct copies of Brown's transcript and other communications concerning Brown. To this certification, the Registrar affixed the official seal of the University. The Associate Dean of Science certified the Associate Registrar as keeper of the records, files and seal of the University, that the Registrar was duly qualified by law to that office, and that full faith and credit should be given to his official acts in all courts of record. The Associate Dean also signed his certification under the seal of the University. In view of the fact that neither of these officials could be subpoenaed to testify in this matter, it would appear these certifications provided the trial court in this case with the same indicia of trustworthiness and reliability provided by the affidavit of the hotel manager in *Leal*.

In *In re Japanese Electronic Products, supra*, the Third Circuit Court of Appeals set forth a comprehensive analysis of the issue of whether the proponent of business record evidence under Federal Rule of Evidence 803(6) (identical to SDCL 19–16–10) could meet his burden without the benefit of testimony from the custodian of the records or another qualified witness. Holding that he could, the circuit court made the following pertinent observations:

> Despite the reference in the Rule to a qualified witness, the trial court held 'that the testimony of the custodian or other qualified witness is not a sine qua non of admissibility in the occasional case where the requirements for qualification as a business record can be met by

documentary evidence, affidavits, or admissions of the parties, i.e., by circumstantial evidence, or by a combination of direct and circumstantial evidence.' [*Zenith Radio Corp. v. Matsushita Electric Industrial Co.*] 505 F.Supp. [1190] at 1236 [(D.C.Pa.1980)]. This interpretation of Rule 803(6) is not challenged here by the defendant. It seems, in any event, consistent with the spirit of the Rules.... It would make little sense to require live witness testimony every time a business record is offered when, from the other materials open for the court's consideration, it can make the required finding to its own satisfaction. The court held that in the absence of live witness testimony as to regularity of the activity and its recordation, the proponent 'must show regularity of practice in some precise and explicit manner, either by external evidence *or from the documents themselves plus surrounding circumstances.' Id.* Placing the burden of establishing regularity of practice on the proponent was also proper.... Finally, turning to the Rule 803(6) proviso excluding business records when 'the source of information or the method or circumstances of preparation indicate lack of trustworthiness,' the court held that the burden of showing such untrustworthiness was on the party opposing admission. *Id.* Placing this burden on the party opposing admission was correct. (emphasis added).

*In re Japanese Electronic Products*, 723 F.2d at 288.

Applying these principles in the instant case would appear to reveal no abuse of discretion in the trial court's admission of the records into evidence. The records were certified by the Registrar of the University under the seal of the University to be true and correct copies of Brown's academic records. The records included written requests by Brown for copies of his transcripts and a copy of a notarized letter written by the Associate Dean to Brown in January 1989 (over a year before trial) advising him that he lacked two six-unit courses for completion of a four year general degree. The copies of Brown's transcripts bear out the statements in the letter showing in chronological order, his failure of various courses and failed years in 1958–59 and 1962–63. Thus, the records themselves appear to provide sufficient circumstantial evidence of the regularity of the record keeping involved. Given the absence of any showing or claim of untrustworthiness in the records, it would appear there was no abuse of discretion by the trial court in allowing their admission into evidence even in the absence of the foundation testimony generally required by SDCL 19–16–10. Finally, it seems the majority goes out of its way to find an abuse of discretion when, at the same time, it concludes that Brown admitted the fact that he was never awarded a bachelor's degree in geology. Therefore, I would affirm this proper use of discretion by the trial court.

Justice AMUNDSON joins this special writing.